22 F.3d 498
 Jyothi SRIRAM, Varsha Tevar, As Custodian for Seema Tevar,
Ami Tevar, Neel Tevar, and Gurdeep Singh Jolly,
Plaintiffs-Appellees,
v.
PREFERRED INCOME FUND III LIMITED PARTNERSHIP and Preferred
Income Fund II Limited Partnership, Defendants-Appellants,
Jesse A. Pittore, Richard J. Westin, Stanley L. Seaman, and
Westor Financial Group, Inc., Defendants.
 Nos. 1255, 1256, Dockets 93-7826L, 93-7828CON.
 United States Court of Appeals,
Second Circuit.
 Argued Jan. 28, 1994.
Decided April 26, 1994.
 
 Charles S. Bronitsky, San Francisco, CA (Rubinstein & Perry, P.C., San Francisco, CA, Lisa E. Cleary, Patterson, Belknap, Webb & Tyler, New York City), for defendants-appellants.
 Henry A. Brachtl, New York City (Goodkind Labaton Rudoff & Sucharow), for plaintiffs-appellees.
 Before: PRATT, WALKER, and JACOBS, Circuit Judges.
 WALKER, Circuit Judge:
 
 
 1
 Defendant limited partnerships appeal from a judgment of the United States District Court for the Southern District of New York (John S. Martin, Jr., Judge), which granted partial summary judgment dissolving the limited partnerships pursuant to Sec. 17-802 of the Delaware Revised Uniform Limited Partnership Act ("DRULPA"), Del.Code Ann. tit. 6, Sec. 17-802, and appointed a liquidating receiver to wind up the affairs of the partnerships. The district court found it undisputed that it was no longer reasonably practicable for the partnerships to carry out their business in conformity with the partnership agreements, and that dissolution and appointment of a receiver was therefore proper.
 
 We affirm.BACKGROUND
 
 2
 Jesse Pittore, Richard Westin, and Stanley Seaman, acting through Westor Financial Group, Inc. ("Westor"), all defendants in the district court, organized a series of limited partnerships and other ventures for the purpose of acquiring numerous landmark or historic buildings in small cities and towns in the Midwest and converting them into residences for elderly tenants. When substantial capital was needed to further the goals of these limited partnerships (the "borrower partnerships"), the defendants organized other limited partnerships (the "lender partnerships") to supply this capital. Westor served as general partner to both the borrower partnerships and the lender partnerships. Two of the lender partnerships were Preferred Income Fund II Limited Partnership ("PIF II") and Preferred Income Fund III Limited Partnership ("PIF III"), also defendants in the district court and now appellants in this matter. Investors, including the plaintiffs herein, contributed approximately $25 million in capital to PIF II and over $18 million to PIF III in exchange for limited partnership interests.
 
 
 3
 The PIF II and PIF III limited partnership agreements (the "Agreements"), which are substantially similar, describe the general purpose of the partnerships as "to make, acquire, hold, sell, exchange and otherwise engage in transactions involving mortgage loans for profit." The Agreements also set very specific conditions and requirements concerning how Westor was to manage and structure the loan transactions. The Agreements establish maximum durations for loans (three years for PIF II loans and five years for PIF III loans) and set the required annual interest rates (12.75% for PIF II loans and 12.65% for PIF III loans). Further, principal repaid to either partnership was not to be reloaned but rather distributed to its limited partners as a return of capital. The Agreements also required that Westor obtain an independent fair market appraisal for each property mortgaged to secure a PIF loan, and no loan was to exceed 75% of this value. Loans to any single borrower could not exceed 20% of a partnership's capital, and every loan to a Westor borrower partnership required a fairness letter from an independent adviser stating that the loan was at least as favorable as an arms-length transaction.
 
 
 4
 From the outset, the borrower partnerships' properties failed to generate sufficient positive cash flow to meet their loan repayment obligations. Although interest payments were made for a short period, these payments were made from borrowed principal set aside for that purpose. The borrower partnerships have been unable to repay the principal due on any of the loans.
 
 
 5
 Westor ascribed the borrower partnerships' inability to pay to, inter alia, the "recessionary economic climate," and sought to implement a debt restructuring plan (the "Restructuring Plan"). If approved, this Restructuring Plan would have allowed Westor to modify or dispense with many of the terms of the original Agreements. Primarily, the Restructuring Plan would have altered the maximum loan terms by extending maturity (and thus forbearing foreclosure) until 1998, which would have resulted in a corresponding decrease in the minimum annual interest rates required by the Agreements. The Restructuring Plan also would have eliminated the restriction on re-loaning repaid principal. Likewise scrapped would have been the Agreements' requirement of independent appraisals, the prescribed loan-to-value ratio, the limit on loans to a single borrower, and the requisite fairness opinions regarding loans to Westor borrower partnerships.
 
 
 6
 In a letter to the PIF limited partners, Westor acknowledged that the Restructuring Plan materially altered the terms of the Agreements: "We recognize that certain aspects of the Plan may not comply with all requirements of the Partnership Agreement." Westor had also stated that the underwriting requirements of the Agreements were "no longer affordable or realistic criteria for the Partnership to follow." While conceding that implementation of the Restructuring Plan would require amendment of the original partnership Agreements and an approval by the limited partners as well as regulatory approval, Westor nevertheless took the extraordinary step of implementing the plan without such amendment and approvals "so as not to jeopardize the long term viability" of the borrower partnerships' properties. In the course of implementing the Restructuring Plan, Westor began reimbursing itself for various expenses not permitted under the Agreements.
 
 
 7
 Plaintiffs brought suit under federal securities laws on behalf of classes of limited partners for damages arising from various misrepresentations and omissions of material facts in the sale of the limited partnership interests. They also brought suit under Delaware law for fraud, for breach of fiduciary duty, for breach of the Agreements, and, relevant to this appeal, for dissolution of the partnerships.
 
 
 8
 The district court granted plaintiffs' motion for summary judgment to dissolve the PIF II and PIF III partnerships, and, in addition to ordering the dissolution of the partnerships, found it appropriate that "a liquidating trustee [be] appointed." See Jolly v. Pittore, Nos. 92 Civ. 3593, 5244 (JSM), 1993 WL 277284, at * 3, 1993 U.S.Dist. LEXIS 9617, at * 7 (S.D.N.Y. July 14, 1993). The district court subsequently appointed Sheldon L. Solow, Esq., to serve as the liquidating trustee.
 
 
 9
 This appeal followed.
 
 DISCUSSION
 I. Jurisdiction
 A. Supplemental Jurisdiction
 
 10
 As a threshold matter, appellants assert that the district court did not have subject matter jurisdiction to consider the plaintiffs' Delaware claim for dissolution. We disagree. A district court may exercise supplemental jurisdiction over pendent state claims when it has jurisdiction over associated federal claims that "form part of the same case or controversy." See 28 U.S.C. Sec. 1367. As accurately explained by Judge Martin, all of the claims in this case "arise from the activities of the general partners and under the partnership agreement." See Jolly, 1993 WL 277284, at * 1, 1993 U.S.Dist. LEXIS 9617, at * 2. Because all of the claims seek to vindicate a wrong arising out of the same course of conduct, the exercise of supplemental jurisdiction over the corresponding state claims was proper.
 
 B. Appellate Jurisdiction
 
 11
 Appellants submit that this court has jurisdiction to review the district court's order under 28 U.S.C. Sec. 1292(a)(2) because the order appointed a "receiver" to liquidate the partnerships. The plaintiffs challenge this conclusion. They argue that the July 14, 1993 order appealed from did not in fact appoint a receiver, and that the receiver was actually appointed later, after the notice of appeal had been filed. We agree with the appellants that we have jurisdiction over this appeal.
 
 
 12
 It is clear from the district court's July 14, 1993 ruling that it had decided to appoint a receiver and was only waiting to perform the ministerial task of naming the individual subject to the submissions of the parties. The ruling states that "it is appropriate to order the [PIF II and PIF III] dissolved and a liquidating trustee appointed," and asks the parties to submit names of someone who "should be appointed liquidating trustee." Jolly, 1993 WL 277284, at * 3, 1993 U.S.Dist. LEXIS 9617, at * 7-8. That the particular individual was unnamed at the time when the decision to appoint a receiver was made does not strip this court of jurisdiction to review the decision to appoint a receiver in the first place. See Chase Manhattan Bank v. Turabo Shopping Ctr., 683 F.2d 25, 26 (1st Cir.1982) (order appointing a receiver still unnamed at the time of the appeal was sufficient to trigger Sec. 1292(a) appellate jurisdiction).
 
 II. Dissolution Under DRULPA Sec. 17-802
 
 13
 We now turn to the merits of appellants' argument that it was error to dissolve the PIF II and PIF III limited partnerships. The district court granted summary judgment dissolving the partnerships under Sec. 17-802 of the DRULPA. Section 17-802 states:
 
 
 14
 On application by or for a partner the Court ... may decree dissolution of a limited partnership whenever it is not reasonably practicable to carry on the business in conformity with the partnership agreement.
 
 
 15
 Del.Code Ann. tit. 6, Sec. 17-802. Under the plain language of the statute, any limited partner may petition the court to dissolve a limited partnership when it is "not reasonably practicable" to carry out the partnerships' business "in conformity with the partnership agreement." See PC Tower Ctr. v. Tower Ctr. Dev. Assocs. Ltd. Partnership, Civil Action No. 10788, 1989 WL 63901, at * 6, 1989 Del.Ch. LEXIS 72, at * 16 (Del.Ch. June 8, 1989) ("The standard set forth by the Legislature is one of reasonable practicability, not impossibility.").
 
 
 16
 Although admitting that the partnerships cannot survive under the strictures imposed by the original Agreements, appellants argue that the partnerships may become viable business entities under the Restructuring Plan. Because implementation of the Restructuring Plan could quite possibly enable the partnerships to carry out the Agreements' purpose "to make, acquire, hold, sell, exchange and otherwise engage in transactions involving mortgage loans for profit," appellants submit that it was error to grant summary judgment. We disagree.
 
 
 17
 Appellants misconstrue the nature of the inquiry. The issue is not whether the partnerships can effectively carry out the general purpose of the Agreements after considerable modification of their terms. Rather, the query under Sec. 17-802 is whether the purpose of the Agreements can be carried out "in conformity with the partnership agreement," that is, in conformity with the terms and conditions of the Agreements to which the limited partners ascribed and on which they relied when choosing to part with their capital.
 
 
 18
 The district court correctly ruled that there is no disputed issue as to the impracticability of carrying out the original Agreements. The terms of the Restructuring Plan are substantially at odds with the provisions of the original Agreements. Gone are the maximum loan terms, the minimum interest rates, and the bar against reloaning principal. Also jettisoned are loan-to-value requirements, the limits on loans to a single borrower, the independent fair market value appraisals, and the independent fairness opinions. Westor understated affairs a bit when it admitted that the Restructuring Plan "may not comply with all requirements of the Partnership Agreement." The Agreements would be comprehensively and fundamentally altered under the Restructuring Plan. As Westor itself conceded, the original Agreements' requirements were simply "no longer affordable or realistic."
 
 
 19
 We therefore affirm the district court's decision to dissolve these partnerships because their business could no longer be carried out in conformity with the respective partnership Agreements.
 
 III. Appointment of a Liquidating Trustee
 
 20
 Appellants argue that even if dissolution of the limited partnerships was proper, the district court abused its discretion in appointing a liquidating trustee. They argue that the general partner, Westor, should be allowed to wind up the partnerships' affairs. This claim can be summarily rejected.
 
 Under Sec. 17-803 of the DRULPA:
 
 21
 the Court ..., upon cause shown, may wind up the limited partnership's affairs upon application of any partner, his legal representative or assignee, and in connection therewith, may appoint a liquidating trustee.
 
 
 22
 See Del.Code Ann. tit. 6, Sec. 17-803. In this case, Westor's fundamental conflict of interest as general partner constituted ample "cause shown" to justify the district court's decision to appoint an independent liquidating trustee.
 
 
 23
 From the start, the relationship between Westor, the borrower partnerships, and the PIF lender partnerships was fraught with conflicts. Westor served as general partner to both the borrower partnerships, who own the properties, and the PIF lender partnerships, who loaned the capital. Indeed, many of the amendments in the Restructuring Plan would have substantially advanced the interests of the borrower partnerships to the clear disadvantage of the PIF lender partnerships. In winding up the PIF lender partnerships' affairs, foreclosure might be in their best interests; however, the low value of the properties would likely disadvantage the borrower partnerships because any equity they acquired would be lost. This very real and manifest conflict gave the district court ample cause to appoint an independent liquidating trustee, which was confirmed by the liquidating trustee's submissions to this court to the effect that "the interests of the former general partner are in conflict with those of the limited partners in such a fundamental way that only an independent third party can and should make decisions regarding the ultimate disposition of the partnerships assets."
 
 CONCLUSION
 
 24
 We have considered appellants' remaining arguments and find them to be without merit. Accordingly, the judgment of the district court is affirmed.