Cliff GREENE, Plaintiff,

v.

WCI HOLDINGS CORP., WCI Holdings II Corp., et al., J.R. Birdle, co-chairman, R.B. McKeon, co-chairman, S.A. Schwartzman, President & CEO, Defendants.

No. 92 Civ. 0559(DNE).

United States District Court,
S.D. New York.

Feb. 27, 1997.

Cliff Greene, Brooklyn, NY, pro se.

Stein, Zauderer, Ellenhorn, Frischer & Sharp, New York City (Louis M. Solomon, and James Robert Pigott, Jr., of counsel), for Defendants.

### OPINION & ORDER

EDELSTEIN, District Judge:

Presently before this Court are plaintiff Cliff Greene's ("plaintiff" or "Greene") objections to a Report and Recommendation ("Report") by Magistrate Judge Naomi Reice Buchwald ("Magistrate Judge Buchwald") recommending that defendants' motion to dismiss plaintiff's complaint with prejudice pursuant to Federal Rules of Civil Procedure ("Rules") 12(b)(1) and 12(b)(6) be granted. For the following reasons, defendants' motion is granted.

### BACKGROUND

This matter reaches this Court framed as a Rule 12(b)(6) motion. Accordingly, the facts recited herein are drawn strictly from plaintiff's complaint, except where specifically noted and justified. See Fed.R.Civ.P. 12(b)(6); Kopec v. Coughlin, 922 F.2d 152, 155–56 (2d Cir.1991). Plaintiff filed with the Clerk of the Court of the Southern District of New York a document titled "Complaint," attached to which are two other documents: (1) an affidavit seeking injunctive relief and a temporary restraining order; and (2) a document titled "Plaintiff Demands Trial By Jury" which is written as a brief. See (Complaint, Greene v. WCI Holdings Corp., 92 Civ. 0559, attached to which is (Affidavit of Cliff Greene for Injunctive Relief and Temporary Restraining Order, Greene v. WCI Holdings Corp., 92 Civ. 0559 ("Greene Aff.") (Jan 22, 1992), and (Plaintiff Demands Trial By Jury, Greene v. WCI Holdings Corp., 92 Civ. 0559 ("Jury Demand") (Jan. 21, 1992).) Because the documents are part of the complaint, they may be considered in deciding defendants' motion to dismiss. Brass v. American Film Technologies, Inc., 987 F.2d 142, 150 (2d Cir.1993) (holding that on a Rule 12(b)(6) motion, a court may consider, inter alia, documents attached to, or incorporated by reference into, a complaint). Moreover, because plaintiff is a pro se litigant opposing a Rule 12(b)(6) motion, the factual allegations in plaintiff's complaint (and attached documents) will be construed in the light most favorable to plaintiff. See LaBounty v. Adler, 933 F.2d 121, 123 (2d Cir.1991) (courts must construe pleadings in the light most favorable to the party opposing a Rule 12(b)(6) motion); Elliott v. Bronson, 872 F.2d 20, 21 (2d Cir.1989) (courts must apply less stringent standards to pro se litigants' submissions).

Plaintiff alleges that between April 1985 and April 1987, he purchased 160,000 warrants (the "warrants") to purchase common stock in the Wickes Companies, Inc. ("Wickes"). (Greene Aff. ¶¶ 2, 3.) Plaintiff paid $481,532.24 for the warrants, each of which entitled plaintiff to buy one share of Wickes' common stock for $4.43. Id. ¶ 2. The Wickes warrants were issued pursuant to a warrant agreement (the "warrant agreement") which set forth the rights and obligations of Wickes and the warrant holders.

The warrant agreement provided that, if Wickes merged with, or sold its assets to, another firm, the Wickes warrant holders would be entitled to the same consideration as the holders of Wickes common stock.

Effective August 13, 1987, both Wickes common stock and Wickes warrants underwent a "five for one reverse split," which left plaintiff with 32,000 warrants. (Jury Demand at 2.) Each post-split warrant entitled plaintiff to purchase one share of Wickes common stock at $22.15 per share. *Id.* One year later, in August 1988, "Wickes announced that it had agreed to be acquired by a newly organized company formed by members of its senior management and Drexel Burnham Lambert Inc." *Id.* Under the terms of this management-led buyout, "approximately 83% of Wickes' outstanding common shares were to be purchased in a tender offer at a price of $12 cash per share." *Id.* The Wickes warrants, however, were not to be purchased in the merger. *Id.*

On August 19, 1988, the last trading day before the buyout was announced, the Wickes warrants' closing price on the New York Stock Exchange ("NYSE") was "approximately $3.00 per warrant." *Id.* at 3. Plaintiff alleges that "after the announcement of the management-led buyout, the price of the warrants dropped radically," and have traded at less that $.125 per warrant. *Id.* The proposed management-led buyout, however, was never consummated.

On October 26, 1988, Wickes announced another proposed merger, this time with WCI Holdings, Inc. ("WCI") in which WCI agreed to make a tender offer of $11.25 per share for 38,324,444 shares, or approximately 80%, of Wickes common stock. *Id.* Under the terms of the merger, each publicly held share of Wickes common stock would be exchanged for .45 shares of a new class of "Wickes 15 1/2% cumulative exchangeable redeemable preferred stock" ("Wickes preferred stock"), which in turn could be exchanged for one share of "WCI 15 1/2% cumulative redeemable exchangeable preferred stock" ("WCI preferred stock"). *Id.* at 4. Under the merger, the Wickes warrants were to remain outstanding until a "follow-up merger" was completed, at which time they

could be exercised in the same manner as the Wickes common stock—that is, into .45 shares of Wickes preferred stock, which could then be exchanged for one share of WCI preferred stock. *Id.* As a result of these steps, Wickes would become a wholly-owned subsidiary of WCI, and the holders of Wickes preferred stock would receive WCI preferred stock. On October 27, 1988, the day after this proposed merger was announced, the warrants closed on the NYSE at a price of $.25 per warrant. *Id.*

Between November 1988 and April 1989, the proposed merger took place as described. The net effect of the merger on the warrants was a dramatic drop in their price. The drop appears to be because each warrant—at an exercise price of $22.15—could now only be exercised into .45 shares of WCI preferred stock which was valued at $11.25. *Id.* at 7.

In May 1989, Wickes, WCI, and several other parties were sued in a class action in Delaware by one of the Wickes warrant holders (the "Delaware case"). Although in the context of a Rule 12(b)(6) motion this Court is primarily confined to judging the adequacy of the Complaint, this Court may also judicially notice public records submitted to it, *see Morelli v. Cedel,* No. 96 Civ. 2874, 1997 WL 61499, at *5 n. 5 (S.D.N.Y. Feb. 13, 1997); *Brass,* 987 F.2d at 150, such as the Complaint and opinions filed in the Delaware case. These documents were submitted to this Court as exhibits to defendants' notice of motion to dismiss. (Notice of Motion, *Greene v. WCI Holdings Corp.,* 92 Civ. 0559 ("Notice of Motion") at Exhs. C–E (April 2, 1992).) The class action asserted claims for breach of the warrant agreement, breach of good faith and fair dealing, breach of fiduciary duty, and misrepresentation. *Id.* at Exh. C at 1–2. As a warrant holder, plaintiff was a member of the putative class in the Delaware case. Prior to class certification, however, the Delaware court dismissed plaintiffs' claims, granting defendants' motion to dismiss for failure to state a claim. *Id.* at 10.

On January 23, 1992, plaintiff initiated this action. Plaintiff's Complaint, liberally construed, appears to allege the following federal violations by defendants: (1) securities laws; (2) racketeering laws; and (3) the

United States Constitution. In addition, plaintiff also asserts state law claims against defendants for: (1) breach of contract; (2) breach of fiduciary duty; (3) breach of implied duty of good faith; and (4) misrepresentation.

On April 3, 1992, defendants filed a motion to dismiss pursuant to Rules 12(b)(1) and 12(b)(6). (Notice of Motion at 1.) On April 15, 1992, plaintiff filed his opposition to defendants' motion to dismiss. (Plaintiff's Memorandum of Law in Opposition of Defendants' Motion to Dismiss His Complaint, *Greene v. WCI Holdings Corp.*, 92 Civ. 0559 ("Pltf.Opp.Memo") (April 13, 1992).) On April 24, 1992, defendants submitted reply papers in further support of their motion. (Defendants' Reply Memorandum in Support of Their Motion to Dismiss the Complaint, *Greene v. WCI Holdings Corp.*, 92 Civ. 0559 ("Dfts. Reply Memo") (April 24, 1992).) On April 27, 1992, this Court ordered that this case be referred to a magistrate judge for pretrial determinations. (Order, *Greene v. WCI Holdings Corp.*, 92 Civ. 0559 (April 27, 1992).) On that same day, this action was assigned to Magistrate Judge Buchwald. (Notice of Case Assignment, *Greene v. WCI Holdings Corp.*, 92 Civ. 0559 (April 27, 1992).)

On July 9, 1992, Magistrate Judge Buchwald filed her Report recommending that this Court grant defendants' motion to dismiss with prejudice in its entirety. (Report at 1.) On July 17, 1992 plaintiff filed objections to the Report. (Objection to Magistrate's Report and Recommendation, *Greene v. WCI Holdings Corp.*, 92 Civ. 0559 ("Pltf.Objs.") (July 16, 1992).) Finally, on July 29, 1992, defendants responded to plaintiff's objections to Magistrate Judge Buchwald's Report. (Defendants' Response to Plaintiff's Objections to the Magistrate Judge's Report and Recommendation That The Court Grant Defendants' motion to Dismiss, *Greene v. WCI Holdings Corp.*, 92 Civ. 0559 ("Dfts.Objs.Resp.") (July 28, 1992).)

## DISCUSSION

Before resolving the issues currently before it, this Court first must set forth the legal standards which govern the instant Opinion and Order.

## I. RELEVANT LEGAL STANDARDS

The relevant legal standards for purposes of the instant Opinion and Order are those which control: (1) a district court's review of a magistrate judge's recommendation; and (2) a motion to dismiss for failure to state a claim upon which relief can be granted pursuant to Rule 12(b)(6). This Court will review each of these standards individually.

### A. Standard For Reviewing A Magistrate Judge's Recommendations

Magistrate judges are empowered by statute to preside over pretrial matters on appointment by a district judge. 28 U.S.C. § 636(b)(1)(A); Fed.R.Civ.P. 72. Where, as here, a Magistrate Judge is "assigned without consent of the parties to hear a pretrial matter dispositive of a claim or defense of a party or a prisoner petition challenging the conditions of confinement ... [t]he magistrate judge shall enter into the record a recommendation for disposition of the matter, including proposed findings of fact where appropriate." Fed.R.Civ.P. 72(b).

Under Federal Rule of Civil Procedure ("Rule") 72(b), and Title 28, United States Code, Section 636(b)(1)(A), a district court evaluating a magistrate judge's recommendation is permitted to adopt those portions of the recommendation to which no "specific, written objection" is made, as long as those sections are not clearly erroneous. Fed. R.Civ.P. 72(b); *Thomas v. Arn*, 474 U.S. 140, 149, 106 S.Ct. 466, 471–72, 88 L.Ed.2d 435 (1985); *see also Ehinger v. Miller*, 942 F.Supp. 925, 927 (S.D.N.Y.1996); *Washington v. Lenihan*, 87 Civ. 4770, 1996 WL 345950 (S.D.N.Y. June 21, 1996). Where a party makes a "specific written objection" within "[ten] days after being served with a copy of the [magistrate judge's] recommended disposition," Fed.R.Civ.P. 72(b), however, the district court is required to make a *de novo* determination regarding those parts of the report. *United States v. Raddatz*, 447 U.S. 667, 676, 100 S.Ct. 2406, 2412–13, 65 L.Ed.2d 424 (1980).

■ The term *"de novo* determination" has "an accepted meaning in the law. It means an independent determination of a controversy that accords no deference to any prior resolution of the same controversy." *Id.* at 690, 100 S.Ct. at 2419, 65 L.Ed.2d 424 (Stewart, J., dissenting); *see also Ocelot Oil Corp. v. Sparrow Indus.*, 847 F.2d 1458, 1464 (10th Cir.1988). Therefore, *de novo* review "means reconsideration afresh by the district judge in this sense: no presumption of validity applies to the magistrate's findings or recommendations." 7 Pt. 2 James Wm. Moore, Moore's Federal Practice, 1 72.04[10.–2], at 72–96 (1995). If the district court disagrees with the magistrate judge's proposals, or any part of them, the judge is free to substitute his own view for that of the magistrate judge without any threshold finding whatsoever. *Id.* However, while the district court is not required to conduct a new hearing regarding a party's objections to the magistrate judge's recommendations, it is required to review the record of the proceedings before the magistrate judge *Id.* at ¶ 72.04[10.–2], at 72–98.

■ In addition, "the district judge retains the power to engage in *sua sponte* review of any portion of the magistrate's report and recommendation, regardless of the absence of objections." 7 Pt. 2 Moore's Federal Practice, ¶ 72.04[10.–1], at 72–95. Such *sua sponte* review "may be under a *de novo* standard, or any lesser standard of review." *Id.* In making its review,, "[t]he district judge may accept, reject or modify the recommended decision, receive further evidence, or recommit the matter to the magistrate judge with instructions." Fed.R.Civ.P. 72(b).

In the case at bar, plaintiff timely objected to Magistrate Judge Buchwald Report. However, plaintiff made a "specific, written objection" only to two of his claims' recommended dismissal by magistrate Judge Buchwald—his constitutional and contract claims. Accordingly, this Court is required to undertake a *de novo* review of Magistrate Judge Buchwald's recommendation only with respect to those two causes of action. Fed. R.Civ.P. 72(b); *Raddatz,* 447 U.S. at 676, 100 S.Ct. at 2412–13. The remainder of the Report, therefore, may be adopted if not "clearly erroneous." *Thomas,* 474 U.S. at 149, 106 S.Ct. at 472.

### B. Rule 12(b)(6) Standard

In reviewing the pleadings on a motion to dismiss for failure to state a claim upon which relief can be granted pursuant to Rule 12(b)(6), a court looks only to the four corners of the complaint and evaluates the legal viability of the allegations contained therein. *See* Fed.R.Civ.P. 12(b)(6); *see also Cortec Indus., Inc. v. Sum Holding L.P.,* 949 F.2d 42, 47 (2d Cir.1991), *cert. denied,* 503 U.S. 960, 112 S.Ct. 1561, 118 L.Ed.2d 208 (1992); *Kramer v. Time Warner, Inc.,* 937 F.2d 767, 773 (2d Cir.1991); *Ryder Energy Distribution Corp. v. Merrill Lynch Commodities, Inc.,* 748 F.2d 774, 779 (2d Cir.1984). A "court may not consider any material other than the pleadings in determining a motion under [Rule 12(b)(6)] unless it converts the motion into a motion for summary judgment under Rule 56. However, material which is submitted as part of the complaint, as well as certain items in the record and public record, may be considered by the court." 2A James Wm. Moore, Moore's Federal Practice, ¶ 12.07[2.–5], at 12–89 (2d ed.1995); *see also Kopec,* 922 F.2d at 155–56; *Fonte,* 848 F.2d at 25.

As the Second Circuit has stated, the court's function "is merely to assess the legal feasibility of the complaint, not to assay the weight of the evidence which might be offered in support thereof." *Geisler v. Petrocelli,* 616 F.2d 636, 639 (2d Cir.1980); *see Ricciuti v. New York City Transit Auth.,* 941 F.2d 119, 124 (2d Cir.1991). "The issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." *Scheuer v. Rhodes,* 416 U.S. 232, 236, 94 S.Ct. 1683, 1686, 40 L.Ed.2d 90 (1974).

Moreover, in evaluating whether a complaint will withstand a Rule 12(b)(6) motion, a court must assume the truth of plaintiff's "well-pleaded allegations." *See Albright v. Oliver,* 510 U.S. 266, 268, 114 S.Ct. 807, 810, 127 L.Ed.2d 114 (1994) (Rehnquist, C.J.); *LaBounty,* 933 F.2d at 123. The court also must read the complaint generously, and draw reasonable inferences in favor of the

pleader. *See LaBounty,* 933 F.2d at 123. A complaint will not be dismissed unless it appears beyond a reasonable doubt that the plaintiff can prove no set of facts in support of his claim that would entitle him to the relief requested. *See Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–02, 2 L.Ed.2d 80 (1957); *see also Hishon v. King & Spalding,* 467 U.S. 69, 73, 104 S.Ct. 2229, 2232, 81 L.Ed.2d 59 (1984); *Branum v. Clark,* 927 F.2d 698, 705 (2d Cir.1991).

■■■ Where a complaint is dismissed for failing to state a claim upon which relief can be granted under Rule 12(b)(6), it is "the usual practice" to allow leave to replead. *Cortec Indus.,* 949 F.2d at 48; *see also Ronzani v. Sanofi S.A.,* 899 F.2d 195, 198 (2d Cir.1990); *Devaney v. Chester,* 813 F.2d 566, 569 (2d Cir.1987). "Although leave to replead is within the discretion of the district court, refusal to grant it without any justifying reason is an abuse of discretion." *Cortec Indus.,* 949 F.2d at 48; *Ronzani,* 899 F.2d at 198. Such a justifying reason exists, for example, where a plaintiff is "unable to allege any fact sufficient to support its claim," *Cortec Indus.,* 949 F.2d at 48; *Spain v. Ball,* 928 F.2d 61, 62–63 (2d Cir.1991), or where "the amendment[ ] would not serve any purpose." *Kaster v. Modification Sys., Inc.,* 731 F.2d 1014, 1018 (2d Cir.1984). If a plaintiff has "at least colorable grounds for relief, justice does ... require leave to amend." *Id.* (quotation omitted). Where no justifying reason or colorable ground for relief exists, however, dismissal with prejudice is warranted. *Cortec Indus,* 949 F.2d at 48.

## II. THIS COURT'S REVIEW OF MAGISTRATE JUDGE BUCHWALD'S RECOMMENDATION TO GRANT DEFENDANTS' MOTION TO DISMISS

As noted above, plaintiff filed objections to Magistrate Judge Buchwald's recommendations. These objections addressed her recommendations regarding both plaintiff's federal constitutional claims and state contract claim. With respect to the recommendations concerning all of plaintiff's other claims, plaintiff made no objections at all. Accordingly, this Court need only consider plaintiff's constitutional and contract claims under a *de novo* standard, and can adopt Magistrate Judge Buchwald's recommendations as to the remaining claims if they are not clearly erroneous. This Court will undertake its *de novo* review first, and then will consider whether to adopt the recommendations dismissing plaintiff's other claims.

### A. De Novo Review

This Court will consider plaintiff's constitutional and contract claims under a *de novo* standard separately.

#### 1. Constitutional Claims

Plaintiff advances a number of claims arising under the United States Constitution. He claims: (1) that he was deprived of property without due process in violation of the Fifth and Fourteenth Amendments; (2) that the Wickes warrant holders were discriminated against in the merger in relation to holders of Wickes common stock in violation of the Equal Protection Clause of the Fourteenth Amendment; (3) that he was discriminated against in violation of the Fourteenth Amendment, evidently because he is black; (4) that he was denied the benefit of all laws under Title 42, United States Code, Section 1981; and (5) that he was deprived of his rights under color of law, under Title 42, United States Code, Section 1983.

In their motion to dismiss, defendants argue that none of these causes of action "remotely has any application to this case." (Dfts. Memo at 21.) Defendants assert that plaintiff's due process and "Takings Clause" claims, must fail in the absence of any allegations of state action. *Id.* at 22, 23. Defendants also contend that "[p]laintiff's apparent claims of racial discrimination must fail because he was treated identically with all other warrant-holders." *Id.* Defendants further maintain that plaintiff "is unable to state a Section 1983 claim because none of the defendants acted, or is even alleged to have acted, 'under color of law.'" *Id.* at 23. According to defendants, plaintiff cannot state a claim under Section 1981 and the Equal Protection Clause because "he does not allege, and cannot allege, that he has been treated any differently than any other warrant-holder." *Id.* at 23, 24.

In opposition to defendants' motion to dismiss, plaintiff does not respond directly to defendants' arguments. Instead, he asserts—at times almost incomprehensibly—that his due process rights were violated, that he was denied equal protection because "persons similarly situated" to him were treated differently by defendants, and that his property rights were violated because the value of his warrants decreased. (Pltf. Opp. Memo at 11–13.)

This Court finds that all of plaintiff's constitutional claims fail. First, as defendants' correctly point out, plaintiff's claims based on alleged Takings and Due Process Clause violations fail because plaintiff has alleged no state action. *See Story v. Green,* 978 F.2d 60, 62 (2d Cir.1992) ("[t]o state a claim either the Due Process Clause or the Takings Clause, plaintiffs [are] required to allege facts showing that state action deprived them of a protected liberty interest"). Second, plaintiff is unable to state an equal protection claim as a Wickes warrant holder because all warrant holders were treated alike. Plaintiff's claim appears based on his mistaken assumption that holders of Wickes common stock and Wickes warrants are "similarly situated" and therefore share the same rights. Common stock holders and warrant holders were members of different classes, however, with rights determined according to their different class memberships. Accordingly, the fact that common stock holders may have fared better than warrant holders does not create an equal protection claim. Moreover, plaintiff does not state an equal protection claim based upon his color because he does not allege that he was discriminated against with respect to non-black warrant holders. Without such allegations, plaintiff cannot state a violation of equal protection.

For the same reason, Section 1981 does not provide plaintiff a viable cause of action. Section 1981 provides:

All persons within the jurisdiction of the United States shall have the same right in every State and territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security

and property as is enjoyed by white citizens, and shall be subject to like punishment, pains, penalties, taxes, licenses, and exactions of every kind, and to no other.

42 U.S.C. § 1981. Section 1981 was enacted, among other things, to provide all persons equal right to contract, irrespective of their race or ethnicity. *See Albert v. Carovano,* 851 F.2d 561, 562 (2d Cir.1988). As explained above, however, in the instant case plaintiff simply cannot state a claim because there is no allegation that he was treated differently than other Wickes warrant holders. Plaintiff's rights as a warrant holder were determined in the same manner as all Wickes warrant holders—by the terms of the warrants. Short of an allegation that Wickes issued one set of warrants to blacks and another to whites—with each set providing its holders with a different bundle of rights—plaintiff's Section 1981 claim must fail.

Finally, in order to state a claim under Section 1983, a plaintiff must prove that defendants (1) acted under color of state law, and (2) in a manner that deprived plaintiff of "any of the rights, privileges or immunities secured by the Constitution." 42 U.S.C. § 1983; *see Eagleston v. Guido,* 41 F.3d 865, 876 (2d Cir.1994), *cert. denied,* —— U.S. ——, 116 S.Ct. 53, 133 L.Ed.2d 18 (1995). In the case at bar, plaintiff's Complaint utterly fails to allege that anyone acted "under color of state law" in order to deprive plaintiff of his rights. Absent such an allegation, plaintiff fails to set forth a viable Section 1983 claim.

Before moving on, however, this Court will consider whether plaintiff should be permitted to replead his constitutional claims. To reiterate, permitting a plaintiff leave to replead is within the district court's discretion. *Cortec Indus,* 949 F.2d at 48. Leave to replead is unwarranted where a plaintiff cannot allege any facts to support its claim. *Id.* In the case at bar, plaintiff has alleged no facts which can be construed, even broadly, as supporting his myriad constitutional claims. For example, without an allegation that a state actor—or even someone acting "under color of state law"—violated plaintiff's rights or deprived him of his prop-

erty, his Takings Clause, due process, and Section 1983 claims simply cannot stand. Likewise, plaintiff's failure to allege that he was treated differently than other Wickes warrant holders negates his equal protection and Section 1981 claims. Moreover, this is not an instance in which a *pro se* plaintiff has unartfully pled otherwise viable causes of action. Rather, because there is not even an intimation of either state action or that plaintiff was treated differently than other warrant holders, it is patently clear that plaintiff has no constitutional claims against defendants. According, this Court finds that plaintiff's constitutional claims should be dismissed with prejudice.

### 2. Contract Claim

█ The second recommendation to which plaintiff submitted objections concerns plaintiff's contract claim. Magistrate Judge Buchwald recommended that this Court, after it dismisses all of plaintiff's federal claims under Rule 12(b)(6), relinquish pendent jurisdiction over plaintiff's state law cause of action, including plaintiff's contract claim. (Report at 15–16.) In his objections to the Report, plaintiff states that "defendants contend and [Magistrate Judge] Buchwald seems to agree that ... the Warrant Agreement permitted [defendants'] shabby treatment of the warrant holders." (Pltf. Objs. at 2.) Plaintiff then claims that defendants breached the Warrant Agreement. *Id* at 2–3. This objection, however, is not a "specific, written objection," as required under Rule 72(b), because it does not even address the basis for Magistrate Judge Buchwald's recommendation that this Court dismiss plaintiff's state law claims. *See Chabrier v. Leonardo*, 90 Civ. 0173, 1991 WL 44838, at *2 (S.D.N.Y. Mar. 26, 1991) ("[i]t is not the role of the district court in reviewing a magistrate judge's report and recommendation under Rule 72(b) to create some theory for the objecting party, hence the Rule's requirement of 'specific' written objections"). As a result, this Court finds that, although plaintiff objected to the Report's recommended dismissal of plaintiff's contract claim, that objection does not comply with Rule 72(b), and, accordingly, this Court need not conduct a *de novo* review of the recommended dis-

missal of that claim. Thus, this Court will consider Magistrate Judge Buchwald's recommendation with respect to plaintiff's contract claims below, along with the other recommendations to which plaintiff does not specifically object.

### B. "Clearly Erroneous" Review

The Report recommends that this Court dismiss all of plaintiff's federal law claims and, once those claims are dismissed, to "decline to exercise pendant jurisdiction over plaintiff's remaining state law claims." (Report at 15–16.) With the exception discussed above, plaintiff did not object to these recommendations, so this Court may adopt them if they are not clearly erroneous. *Thomas*, 474 U.S. at 149, 106 S.Ct. at 471–72. Plaintiff's claims subject to this standard of review are the alleged federal securities law violations, federal anti-racketeering law violations, and state law claims for breach of contract, breach of fiduciary duty, breach of implied duty of good faith, and misrepresentation. This Court will apply the clearly erroneous standard of review to these three categories of claims individually.

### 1. Federal Securities Law Claims

Plaintiff's Complaint alleges that defendants violated Section 10(b) of the Securities and Exchange Act of 1934, as well as Rule 10b–5 and Rule 15c1–2, promulgated thereunder. (Greene Aff. at 2.) In recommending that all of plaintiff's federal securities law claims be dismissed, Magistrate Judge Buchwald first noted that Rule 15c1–2 "applies only to the regulation of securities brokers and dealers and therefore cannot provide the basis for plaintiff's Complaint." (Report at 7 n. 6.) Magistrate Judge Buchwald also found that plaintiff pleaded his Section 10(b) and Rule 10b–5 claims inadequately because, "[a]lthough plaintiff does make a conclusory allegation of both misrepresentation and scienter, he fails to allege any of the other essential elements of a violation of the[se] security laws." *Id.* at 8–9. Specifically, the Report states that "plaintiff fails to allege any misrepresentation by defendant *in connection with* the purchase or sale of securities[,] [b]ecause the alleged misrepresenta-

tions ... took place years after plaintiff purchased the warrants and were made in connection with the merger of Wickes and WCI, not in connection with the purchase of plaintiff's warrants." *Id.* at 9 (emphasis in original). Magistrate Judge Buchwald also determined that plaintiff failed to allege reliance, another essential element of a securities fraud claim. *Id.* Because "[p]laintiff's averments ... fail to point to any facts indicative of fraudulent conduct on the part of the defendants ... [Magistrate Judge Buchwald] recommend[s] that plaintiff's securities laws claims be dismissed." *Id.* at 9–10.

■ First, this Court notes that Rule 15c1–2 is applicable only to securities brokers and dealers. *See Rolf v. Blyth Eastman Dillon & Co.,* 424 F.Supp. 1021, 1024 (S.D.N.Y.1977), *aff'd,* 570 F.2d 38 (2d Cir.), *cert. denied,* 439 U.S. 1039, 99 S.Ct. 642, 58 L.Ed.2d 698 (1978). In the instant case, no defendant is a securities broker or dealer. As a result, this Court finds that Magistrate Judge Buchwald's recommended dismissal of plaintiff's Rule 15c1–2 claim is not clearly erroneous. Accordingly, this Court finds that it should adopt that recommendation.

Second, in order to state a securities fraud claim under Section 10(b) and Rule 10b–5, a plaintiff must allege that:

[1] in connection with the purchase or sale of securities, the defendant, [2] acting with scienter, [3] made a material false representation or omitted to disclose material information and that [4] plaintiff's reliance on defendant's action, [5] caused [plaintiff] injury.

*LaSalle Nat'l Bank v. Duff & Phelps Credit Rating Co.,* 951 F.Supp. 1071, 1082, (S.D.N.Y.1996) (alteration in original) (quoting *In re Time Warner Inc. Securities Litig.,* 9 F.3d 259, 264 (2d Cir.1993)). The failure to establish any of these elements is fatal to a Section 10(b) or Rule 10b–5 claim. *See id.; Central Bank of Denver, N.A. v. First Interstate Bank of Denver, N.A.,* 511 U.S. 164, 190–91, 114 S.Ct. 1439, 1455, 128 L.Ed.2d 119 (1994).

■ This Court has reviewed plaintiff's Complaint in the light most favorable to him, and has liberally construed it as a *pro se*

pleading. Despite such efforts, however, this Court finds that—as Magistrate Judge Buchwald explained—plaintiff simply has failed to allege that defendants' alleged misrepresentations occurred in connection with plaintiff's securities purchase, or the plaintiff relied upon those alleged misrepresentations. Because these allegations are necessary elements of a federal securities fraud claim under Section 10(b) or Rule 10b–5, this Court finds that magistrate Judge Buchwald's recommendation that these claims be dismissed is not clearly erroneous. Accordingly, this Court finds that her recommendation to dismiss plaintiff's securities fraud claims should be adopted.

■ In addition, the Report recommends that this Court dismiss plaintiff's federal securities laws claims with prejudice. Even though the dismissal of a fraud claim subject to the heightened pleading requirements of Rule 9(b) is typically without prejudice, where, as here, plaintiff "ha[s] presented nothing to suggest that they could amend the complaint to adequately plead" a Section 10(b) or Rule 10b–5 cause of action, dismissal with prejudice may be appropriate. *In re Time Warner,* 9 F.3d at 266. In the case at bar, plaintiff alleges that defendants' misconduct occurred after he purchased the Wickes warrants. As such, he has "presented nothing" which suggests that defendants' wrongdoing was related to his purchase, or that he relied upon their wrong-doing to his detriment in making his warrant purchase. Accordingly, this Court finds that Magistrate Judge Buchwald's recommendation to dismiss plaintiff's securities law violations with prejudice is not clearly erroneous, and should be adopted.

#### 2. RICO Claims

In recommending that plaintiff's RICO claims should be dismissed, Magistrate Judge Buchwald found that "[p]laintiff's Complaint manifestly fails to state a claim under RICO," because of plaintiff's failure: (1) to "plead any factual basis for the alleged predicate acts" of mail, wire fraud or conspiracy; (2) to allege "a pattern of racketeering activity"; (3) "to aver the existence of a continuing enterprise by defendants"; or (4)

"to allege any injury to business or property resulting from defendants' purported RICO violations." (Report at 11–12.) Moreover, Magistrate Judge Buchwald found that "even it [she was] to ignore plaintiff's myriad deficiencies in pleading the legal prerequisites of a RICO cause of action, plaintiff's RICO claim still fails because none of the facts set forth in plaintiff's lengthy Complaint can in any way be construed as constituting activity in violation of RICO." *id.* at 12.

 Title 18, United States Code, Section 1964(c) provides the basis for a civil RICO cause of action. It provides:

> Any person injured in his business or property by reason of a violation of section 1962 of this chapter may sue therefor in any appropriate United States district court and shall recover threefold the damages he sustains and the cost of the suit, including a reasonable attorney's fee.

18 U.S.C. § 1964(c). Accordingly, to pursue a civil RICO claim, a plaintiff must establish a violation of Title 18, United States Code, Section 1962 (the "RICO statute"). The RICO statute in relevant part provides:

> (c) It shall be unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt.

18 U.S.C. § 1962(c). In order to state a civil claim under the RICO statute, "a plaintiff has two pleading burdens." *Moss v. Morgan Stanley, Inc.,* 719 F.2d 5, 17 (2d Cir.1983), *cert. denied,* 465 U.S. 1025, 104 S.Ct. 1280, 79 L.Ed.2d 684 (1984). First, a plaintiff must allege that the defendant has violated "the substantive RICO statute ... commonly known as 'criminal RICO.'" *Id.* In order to meet this initial burden a plaintiff must

> allege the existence of seven constituent elements: (1) that the defendant (2) through the commission of two or more acts (3) constituting a "pattern" (4) of "racketeering activity" (5) directly or indirectly invests in, or maintains an interest in, or participates in (6) an "enterprise" (7)

the activities of which affect interstate or foreign commerce.

*Id.; see also Zigman v. Giacobbe,* 944 F.Supp. 147, 152 (E.D.N.Y.1996). Once a civil plaintiff adequately pleads defendant's violation of the RICO statute by alleging these seven elements, "plaintiff [also] must allege that he was 'injured in his business or property *by reason of* a violation of [the RICO statute].'" Moss, 719 F.2d at 17 (emphasis in original).

 As Magistrate Judge Buchwald noted, the entirety of plaintiff's RICO allegations are as follows:

> The plaintiff has purposely saved 18 U.S.C., [sic] for last, for it is the statute that instills fair [sic] into the hearts of those who commit wrongdoings. Further, those who think that they are smarter than Michael Milken. The above-mentioned statute is popularly known as the RICO–Law Racketeer Influenced Corrupt Organizations Act. Three of the five predicates of the statute were violated by the defendants, that resulted in irreparable damages. Monetary, physical, and mental to the plaintiff. The predicates mentioned above, are: 1–Mail fraud; 2–Wire fraud; and, 3–Conspiracy to defraud.

(Report at 11); (Jury Demand at 14.) No matter how charitably this Court construes this allegation, it cannot conceivably be interpreted to plead a viable RICO cause of action under the eight-part test set forth above. *See Moss,* 719 F.2d at 17. Moreover, plaintiff fails to plead any predicate acts which might constitute mail fraud, wire fraud, or conspiracy. As a result, this Court finds that Magistrate Judge Buchwald's recommendation to dismiss plaintiff's RICO claims for failure to state a claim is not clearly erroneous, and that plaintiff's RICO claims should be dismissed.

 In addition, the Report recommends that this Court dismiss plaintiff's federal securities laws claims with prejudice. As explained above, dismissal with prejudice is within the trial court's discretion, and is appropriate where a plaintiff is unable to allege any facts sufficient to support its claim. *Cortec Indus.,* 949 F.2d at 48. Although repleading generally is permitted where fraud

allegations are dismissed as inadequate under the heightened pleading requirements of Rule 9(b), *see Official Publications, Inc. v. Kable News Co., Inc.,* 884 F.2d 664, 669 (2d Cir.1989), in the case at bar, repleading is not warranted. After closely reviewing plaintiff's entire Complaint, this Court finds that it makes no allegations which can support a RICO claim. As a result, this Court finds that Magistrate Judge Buchwald's recommendation that plaintiff's RICO claims be dismissed with prejudice is not clearly erroneous, and therefore should be adopted.

### 3. State Law Claims

 Plaintiff alleges state law claims for breach of contract, breach of fiduciary duty, breach of an implied duty of good faith, and misrepresentation. After recommending that this Court dismiss all of plaintiff's federal claims, Magistrate Judge Buchwald recommended that "this Court decline to exercise pendant jurisdiction over plaintiff's remaining state law claims." (Report at 15–16.) Generally, "a district court may exercise supplemental jurisdiction over pendant state claims when it has jurisdiction over federal claims that form 'part of the same case or controversy.'" *Sriram v. Preferred Income Fund III Ltd. Partnership,* 22 F.3d 498, 501 (2d Cir.1994) (quoting 28 U.S.C. § 1367). Moreover, "in the usual case in which all federal-law claims are eliminated before trial, the balance of factors ... will point toward declining to exercise jurisdiction over the remaining state-law claims." *Morse v. University of Vermont,* 973 F.2d 122, 127 (2d Cir.1992). In the case at bar, this Court previously determined that all of plaintiff's federal claims should be dismissed with prejudice. With no federal law claims remaining, this Court finds that Magistrate Judge Buchwald's recommendation that this Court decline to exercise pendant jurisdiction over the remaining state law claims is not clearly erroneous. Accordingly, this Court find that that recommendation should be adopted, and that plaintiff's state law claims should be dismissed for lack of subject matter jurisdiction.

### CONCLUSION

IT IS HEREBY ORDERED THAT plaintiff's federal securities law claims, RICO claims, and constitutional claims are dismissed with prejudice.

IT IS FURTHER ORDERED THAT plaintiff's state law claims are dismissed for lack of subject matter jurisdiction.

IT IS FURTHER ORDERED THAT Magistrate Judge Buchwald's Report and Recommendation is adopted insofar as it concerns plaintiff's federal securities law claims, RICO claims, and state law claims.

SO ORDERED.