Jack FEIWUS, Plaintiff,

v.

GENPAR, INC., Jerome Josefson, Joseph Margolis, Renee Operman and Jacob Hirsch, individually and as Directors of Genpar, Inc., and Abingdon Management, a Limited Partnership, Defendants.

No. 97–CV–6121 (FB).

United States District Court,
E.D. New York.

March 30, 1999.

Michele Kahn, Sankel, Skurman & McCartin, LLP, New York City, for plaintiff.

John S. Parnese, Scano & Parnese, Staten Island, NY, for defendants.

### MEMORANDUM AND ORDER

BLOCK, District Judge.

Plaintiff Jack Feiwus ("Feiwus"), represented by counsel, moved for the dissolution of Genpar, Inc. ("Genpar") and Abingdon Management, and the appointment of a receiver, or alternatively, for the Court to compel defendants Jerome Josefson, Joseph Margolis, Renee Operman and Jacob Hirsch (collectively, the "individual defendants") to buy Feiwus's minority interest in Genpar. The Court referred the motion to Magistrate Judge Robert M. Levy, who on February 17, 1999 issued a Report and Recommendation recommending that: (1) Feiwus's motion for an order dissolving Genpar and appointing a receiver to administer the dissolution, or alternatively, compelling the individual defendants to buy-out Feiwus's interest in Genpar, be denied because the Court should abstain from exercising jurisdiction; (2) his motion for an order dissolving Abingdon Management be denied without prejudice; and (3) his discretionary claims be dismissed and his damage claims be stayed, pending resolution of the discretionary claims in New York State court. In light of Feiwus's

March 15, 1999 objections to the Report and Recommendation, the Court undertakes a *de novo* review of the Magistrate Judge's Report and Recommendation. *See* 28 U.S.C. § 636(b)(1)(C); *United States v. Tortora*, 30 F.3d 334, 337–38 (2d Cir.1994).

## BACKGROUND

Feiwus asserted six causes of action against the defendants: (1) corporate oppression and waste; (2) breach of fiduciary duty; (3) failure to account for wrongful official corporate conduct; (4) breach of contract; (5) official corporate conduct engaged in pursuant to an unlawfully noticed meeting; and (6) fraud. He asked the court to dissolve defendant Genpar, a New York corporation in which he owns a thirty percent interest, under the Supervision of a court-appointed receiver. He alternately proposed that the individual defendants be required to buy out his interest. He asked the Court to require the defendants to account for their alleged breaches of fiduciary duty and contract, and for their fraud. He requested that the Court declare null and void the actions taken at the shareholders' September 29, 1997 meeting, and that he be awarded damages of not less that $750,000.

## DISCUSSION

The Report and Recommendation recommends that under *Burford v. Sun Oil*, 319 U.S. 315, 332–34, 63 S.Ct. 1098, 87 L.Ed. 1424 (1943), the Court abstain from exercising subject matter jurisdiction over Feiwus's claims for the dissolution of Genpar, because a federal court may abstain from exercising jurisdiction over a case such as this one where federal review would disrupt a state's ability to administer local affairs which are of great interest to the state. The exercise of federal review over the dissolution of a New York corporation would disrupt New York's attempt to develop a unified policy concerning the equitable dissolution of its corporations, a matter of great importance to the state. As New York can offer an appro-

priate forum for resolving questions of corporate dissolution, federal abstention is appropriate. *See Friedman v. Revenue Management, Inc.*, 38 F.3d 668, 671 (2d Cir.1994) (affirming abstention on claims for dissolution of New York corporation); *c.f. Sriram v. Preferred Income Fund III Ltd. Partnership*, 22 F.3d 498, 501–02 (2d Cir.1994) (affirming federal court's dissolution of Delaware partnership when dissolution did not involve exercise of discretion). However, while a federal court may abstain from exercising jurisdiction over discretionary claims for equitable relief such as a demand for corporate dissolution or buy-out, the Court may not relinquish jurisdiction over common law claims for damages. *See Quackenbush v. Allstate Ins. Co.*, 517 U.S. 706, 730, 116 S.Ct. 1712, 135 L.Ed.2d 1 (1996). It may, however, enter a stay order pending resolution of related equitable claims by a state court, as the Magistrate Judge recommended. *Id.* at 719–20, 116 S.Ct. 1712.

Feiwus objects that the Magistrate Judge misconstrued the factual record and misread Feiwus's request for relief. A careful comparison of the Report and Recommendation shows that it accurately draws upon the record before the Magistrate Judge. He also objects that abstention will delay the action, but the proper focus of an abstention analysis is the effect of federal interference on New York's local affairs, not on Feiwus's schedule.

Feiwus also objects that the Magistrate Judge should have recommended that a buy-out order be issued, rather than that the Court abstain from exercising jurisdiction over dissolution, because Feiwus in fact had expressed a preference for such a course of action. *See* Exhibit 10 to Plaintiff's Affidavit in Support of Objections ("Pl.Aff."), at 2–3 (proposing that if the Court planned to abstain from exercising jurisdiction over the corporate dissolution, the Court first entertain the request for a buy-out). Under New York law, both a buy-out and a corporate dissolution involve an exercise of a court's discretion in

an area in which New York has "strong interest in the uniform development and interpretation of the statutory scheme regarding its corporations." Report and Recommendation, at 298 (citing *Friedman*, 38 F.3d at 671). Thus, even if the Magistrate Judge accepted Feiwus's request for a buy-out as his preferred course of action, abstention would be appropriate.

Lastly, Feiwus objects to the staying of his legal claims while his equitable claims are before the state court because this schedule requires him to proceed with his liquidation claim before his legal claims, contrary to his expressed preference. The record clearly shows that Feiwus only provisionally suggested that he would prefer to hold his dissolution claim in abeyance if the Court would appoint a receiver and proceed to trial on the legal claims; he did not withdraw his other claims for equitable relief, such as a buy-out, which implicate abstention. *See* Exhibit 9 to Pl. Aff. at 19, Exhibit 10 to Pl. Aff., at 2–3. The Magistrate Judge's recommendation for abstention appropriately balanced Feiwus's equitable claims and legal claims, which depend upon similar facts, by recommending a stay of the legal claims so that the federal court does not determine factual issues which may be bound up in the state court's corporate dissolution determination.

## CONCLUSION

The Court fully concurs with, and adopts, the Magistrate Judge's well-reasoned Report and Recommendation in its entirety.

**SO ORDERED.**

*REPORT AND RECOMMENDATION*

LEVY, United States Magistrate Judge.

By order dated June 3, 1998, the Honorable Frederic Block, United States District Judge, referred this matter to me for a report and recommendation on the motion by plaintiff Jack Feiwus ("Plaintiff" or "Feiwus") for an order: (1) dissolving defendants Genpar, Inc. ("Genpar") and Abingdon Management and appointing a receiver to administer the dissolution; or, in the alternative, (2) compelling defendants Genpar, Jerome Josefson ("Josefson"), Joseph Margolis ("Margolis"), Renee Operman ("Operman"), and Jacob Hirsch ("Hirsch"), individually and as directors of Genpar, and Abingdon Management (collectively, "Defendants") to buy out Plaintiff's minority interests in Genpar and Abingdon Management. For the reasons stated below, I respectfully recommend that Plaintiff's motion be denied. In addition, I respectfully recommend that Plaintiff's discretionary claims be dismissed without prejudice and that his claims for damages be stayed, pending resolution of the discretionary claims in New York Supreme Court.

## BACKGROUND

Feiwus, the sole plaintiff in this diversity action, claims that this case presents an "unfortunately typical situation" of the majority of a closely held corporation (Genpar) harming the minority (Feiwus). (Affidavit of Jack Feiwus, sworn to on May 29, 1998 ("Feiwus Aff.") ¶ 3.) Plaintiff is a thirty percent shareholder of defendant Genpar, a New York corporation formed on or about June 1, 1994 with New York as its principal place of business. (Am. Compl. ¶¶ 1, 2; Answer ¶¶ 2, 3.) Plaintiff has been a real estate developer and builder on Staten Island since 1968. (Feiwus Aff. ¶ 6.) He is also a licensed real estate broker and property manager. (*Id.*) In 1984, Feiwus and defendants Josefson and Margolis became aware that thirty-two town houses in Richmond County, New York ("the property") were for sale and decided to structure a deal to purchase the property. (*Id.* ¶ 7.) They formed a limited partnership, Abingdon Management, to acquire title to the property, and formed Genpar as the sole general partner of Abingdon Management. (*Id.* ¶ 10.)

The parties are in broad agreement about the purpose of the limited partner-

ship and the actions Genpar was to take to further this purpose: The limited partnership was created to acquire title to thirty-two town houses in Richmond County, New York. (Am. Compl. ¶ 12; Answer ¶ 13.) To this end, Genpar would create a "dummy" corporation, Abingdon Management Corp., which would execute a mortgage to purchase and acquire title to the town homes. (Am. Compl. ¶ 13; Answer ¶ 14.) Then, at some unspecified date after it acquired title, Abingdon Management Corp. was to deed the town houses over to the limited partnership, subject to any mortgage it had executed on the property. (Am. Compl. ¶ 13; Answer ¶ 14.) After the limited partnership acquired title to the property, it was to enter into leases with tenants, and make improvements to the property. (Am. Compl. ¶ 13; Answer ¶ 14.) In addition, the limited partnership agreement contemplates converting the town houses into a homeowners association so that individual town houses might be sold. (Am. Compl. ¶ 13; Answer ¶ 14.)

The parties are also in agreement concerning three central facts: (1) On June 3, 1994, Abingdon Management Corp. purchased the town houses[1] (Am. Compl. ¶ 16; Answer ¶ 17); (2) Sometime after September 29, 1997, Genpar and the individually named defendants canceled Feiwus' authority to sign checks on behalf of Genpar and the limited partnership, and transferred all management and brokerage responsibilities for the property to Dome Management, Inc. (Am. Compl. ¶ 25; Answer ¶ 38); and (3) Sometime in October of 1997, Abingdon Management Corp. transferred title to the limited partnership.[2] (Am. Compl. ¶ 16; Defs.' Mem. of Law ¶ 18.)

Beyond this, much is in dispute. To hear Feiwus tell the tale, he had a contract with the other incorporators of Genpar that granted him the right to be the exclusive managing agent and real estate broker for the property. (Am.Compl.¶ 14.) He would manage the property through his company, Feiwus Realty, Ltd., and in return he would be paid management fees and commissions for the rental and sales of the town houses. (*Id.*) Feiwus claims that Genpar and the individually named defendants improperly removed him as the exclusive managing agent and real estate broker for the property at a shareholders' meeting that was held on September 29, 1997 (and which, Feiwus claims, was illegally convened) (*id.* ¶¶ 22–25), and in so doing breached their contract with him, denying him management fees and potential brokerage commissions. (*Id.* at 25–26, ¶ 4.) Next, Feiwus alleges that defendant Josefson wholly owned and controlled Abingdon Management Corp. (*Id.* ¶ 16.) Feiwus clearly assumes that Josefson was under an obligation to transfer the deed from Abingdon Management Corp. to the limited partnership a relatively short time after the former acquired title. (*Id.* ¶¶ 17–18.) He therefore argues that Josefson's failure to do so, and the other individually named defendants' complicity in this, has reduced the value of the property (*id.* ¶¶ 19–20), and constitutes breaches of fiduciary duty and contractual obligation and fraud. (*Id.* ¶ 2.) Lastly, Feiwus alleges that Josefson has wrongfully withheld Genpar's earned profits from him and Genpar's other shareholders. (*Id.* ¶ 21.)

The Defendants see matters quite differently. They acknowledge that it was

---

1. Both Plaintiff and Defendants state that Abingdon Management Corp. purchased the property on the same day as the formation of the limited partnership. (Am. Compl. ¶ 16; Answer ¶ 17.) This chronology is inconsistent, however, with the parties' declarations that the limited partnership was formed on or about June 28, 1994. (Am. Compl. ¶ 11; Answer ¶ 12.)

2. Plaintiff maintains that title was transferred on October 13, 1997; defendants claim that the deed giving title to the limited partnership was filed on October 10, 1997. A copy of the deed is included as Exhibit L of Pl.'s Notice of Mot. for Dissolution and Appointment of Receiver. The deed is dated July 31, 1997 and was filed with the Richmond County Clerk on October 10, 1997.

agreed that Feiwus would be the managing agent for the property. (Defendants' Mem. of Law ¶ 19.) However, they imply that the agreement was between the limited partnership (rather than the incorporators of Genpar) and Feiwus Realty, Ltd. (rather than with Feiwus, individually). (*Id.*) In addition, Defendants imply that the agreement created a contract for employment at will and, therefore, that the limited partnership had no obligation to retain Feiwus Realty, Ltd. as its managing agent. (*Id.*) Possibly because Feiwus nowhere explicitly asserts that Abingdon Management Corp. was under an obligation to timely transfer title to the limited partnership, Defendants do not directly address this issue. They do, however, deny that their actions constituted either breach of fiduciary duty (Answer ¶ 62) or breach of contractual obligation. (*Id.* ¶ 19.) Further, Defendants flatly deny that Josefson has wrongfully failed to distribute Genpar's profits to the corporation's shareholders. (*Id.* ¶ 34.)

### The Amended Complaint and Answer

Feiwus asserts the following six causes of action in his amended complaint: (1) corporate oppression and waste (Am. Compl.¶¶ 26–47); (2) breach of fiduciary duty (*id.* ¶¶ 48–50); (3) failure to account for wrongful official corporate conduct (*id.* ¶¶ 51–55); (4) breach of contract (*id.* ¶¶ 56–57); (5) official corporate conduct engaged in pursuant to an unlawfully noticed meeting (*id.* ¶¶ 58–59), and (6) fraud. (*Id.* ¶¶ 60–64.) Feiwus asks for four forms of relief. First, he asks the court to dissolve Genpar and the limited partnership.

(*Id.* at 25, ¶ 1.) Second, Feiwus asks that, pursuant to N.Y.Bus.Corp.Law § 720,[3] the court force Defendants to account for their breaches of fiduciary duty and contract and for their fraud. (*Id.* ¶ 2) Third, Feiwus requests that the court declare null and void tile actions taken at the September 29, 1997 shareholders' meeting (at which he was removed as managing agent and real estate broker for the property). (*Id.* at 26, ¶ 6.) Lastly, Feiwus seeks compensatory damages in an amount not less than $750,000 for Defendants' breach of contract in discharging Feiwus Realty, Ltd., for their breaches of duties under the limited partnership agreement, for their failure to properly distribute the profits and dividends of Genpar, and for denying Feiwus management commissions and brokerage fees for his management and sale of the townhouses. (*Id.* at 25–26, ¶ 4.) Feiwus also seeks exemplary damages equal to double the compensatory damages, as well as interest, attorneys' fees, and costs. (*Id.* at 27, ¶¶ 7–8.)

The Defendants deny each of the allegations supporting Feiwus' prayer for relief and assert, as affirmative defenses, failure to state a claim (Answer ¶ 79), Statute of Frauds (*id.* ¶ 81), lack of subject matter jurisdiction due to a failure of diversity (*id.* ¶ 83), lack of standing (*id.* ¶ 85), and absence of necessary parties. (*Id.* ¶¶ 87, 89.) The Defendants further assert that defendant Hirsch is immune from liability for all of Feiwus' claims because he is not a director of Genpar but only a minority shareholder in this corporation. (*Id.* ¶ 91.)[4] Lastly, Defendants assert that as

---

3. Section 720, authorizing derivative actions against the directors and officers of a corporation, states in relevant part:

    (a) An action may be brought against one or more directors or officers of a corporation to procure a judgment for the following relief:

    (1) Subject to any provision of the certificate of incorporation authorized pursuant to paragraph (b) of section 402, to compel the defendant to account for his official conduct in the following cases:

    (A) The neglect of, or failure to perform, or other violation of his duties in the manage-

ment and disposition of corporate assets committed to his charge.

    (B) The acquisition by himself, transfer to others, loss or waste of corporate assets due to any neglect of, or failure to perform, or other violation of his duties.

4. Defendants claim that as a minority shareholder, Hirsch "is not liable to the plaintiff for any and all of the claims asserted by the defendant." (Answer ¶ 91.) Presumably defendants meant "all of the claims asserted by the *plaintiff.*"

shareholders, Josefson, Margolis, Operman, and Hirsch are not liable to Feiwus for any of his claims. (*Id.* ¶ 93.) They therefore ask that the court dismiss Feiwus' complaint with costs.

### The Instant Motion

By instant motion, Plaintiff moves for an order dissolving Genpar and the limited partnership and appointing a receiver to administer the dissolution, pursuant to N.Y.Bus.Corp.Law §§ 1104–a, 1113, and 1201 *et seq.* (McKinney 1986 & Supp. 1998).[5] He asks, in the alternative, that the court compel Defendants to buy out his interest in Genpar and the limited partnership. With regard to the latter, Plaintiff requests that the court hold a hearing to determine the fair market value of his interest.

### DISCUSSION

#### A. *Burford Abstention*

■ Generally, a federal district court has the duty to adjudicate all controversies properly before it. An "extraordinary and narrow exception" to this duty occurs when the court finds that the "exceptional circumstances" exist in which an "order to the parties to repair to state court would serve an important countervailing interest." *County of Allegheny v. Frank Mashuda Co.,* 360 U.S. 185, 188–89, 79 S.Ct. 1060, 3 L.Ed.2d 1163 (1959). What has come to be called the Burford abstention doctrine describes one class of exceptional circumstances. In *Burford v. Sun Oil Co.,* the Supreme Court held that a federal court may abstain from exercising jurisdic-

tion over a case where federal review would disrupt a state's ability to administer local affairs which are of great interest to the state. 319 U.S. 315, 332–34, 63 S.Ct. 1098, 87 L.Ed. 1424 (1943). Each of the claims made by Plaintiff in the present case implicates the Burford doctrine.

Burford abstention is generally implicated when a federal court determines that the federal interest in retaining jurisdiction over a dispute properly before it is outweighed by the state's interest in adjudicating the issues in its own forum. *Quackenbush v. Allstate Ins. Co.,* 517 U.S. 706, 728, 116 S.Ct. 1712, 135 L.Ed.2d 1 (1996). In arriving at the decision to abstain, the federal court "balances the strong federal interest in having certain classes of cases, and certain federal rights, adjudicated in federal court, against the State's interests in maintaining uniformity in the treatment of an essentially local problem." *Id.* The Supreme Court's precedents "do not provide a formulaic test for determining when dismissal under *Burford* is appropriate." *Id.* They do, however, identify three factors that should inform the deliberation of a court.

The first factor is a condition precedent for abstention. Burford abstention is premised on the notion that a state's interest in adjudicating a class of issues trumps the federal interest in reviewing the claim in federal court, as well as the plaintiff's right to have her or his case heard by an Article III tribunal. In order for abstention to be proper, then, it must be the case that the state provides an adequate forum for adjudicating the plaintiff's claims. *Id.*

---

**5.** Section 1104–a states in relevant part:

(a) The holders of twenty percent or more of the votes of all outstanding shares of a corporation ... entitled to vote in an election of directors may present a petition of dissolution on one or more of the following grounds:

(1) The directors or those in control of the corporation have been guilty of illegal, fraudulent or oppressive actions toward the complaining shareholders;

(2) The property or assets of the corporation are being looted, wasted, or diverted for

non-corporate purposes by its directors, officers or those in control of the corporation. Section 1113 states:

At any stage of an action or special proceeding under this article, the court may, in its discretion, make all such orders as it may deem proper in connection with preserving the property and carrying on the business of the corporation, including the appointment and removal of a receiver under article 12 (Receivership), who may be a director, officer or shareholder of the corporation.

at 727, 116 S.Ct. 1712 (stating that abstention is proper only when the court has found that "the State's interests are paramount and that a dispute would best be adjudicated in a state forum"); *New Orleans Pub. Serv., Inc. v. Council of New Orleans,* 491 U.S. 350, 361, 109 S.Ct. 2506, 105 L.Ed.2d 298 (1989) (recognizing that abstention is valid only when "timely and adequate state court review is available"); *Colorado River Water Conservation Dist. v. United States,* 424 U.S. 800, 815, 96 S.Ct. 1236, 47 L.Ed.2d 483 (1976) (stating that where an elaborate state system of review existed and disruption is likely from federal review, abstention is proper) (describing *Burford*); *Alabama Pub. Serv. Comm'n v. Southern Ry. Co.,* 341 U.S. 341, 349 & n. 11, 71 S.Ct. 762, 95 L.Ed. 1002 (1951) (abstention is permissible where there exists adequate state court review but not otherwise); *Burford,* 319 U.S. at 327, 63 S.Ct. 1098 ("As a practical matter, the federal courts can make small contribution to the well organized system of regulation and review which the [state] statutes provide. [State] courts can give fully as great relief ... as the federal courts.").

A second factor is whether the case presents "difficult questions of state law bearing on policy problems of substantial public import whose importance transcends the result in the case then at bar." *New Orleans Pub. Serv., Inc.,* 491 U.S. at 361, 109 S.Ct. 2506 (quoting *Colorado River,* 424 U.S. at 814, 96 S.Ct. 1236) (internal quotation marks omitted); *Burford,* 319 U.S. at 317–318, 63 S.Ct. 1098 (stating that the court's discretionary power to abstain from exercising jurisdiction in a particular case should be employed with an eye toward the public interest); *Hanlin Group, Inc. v. Power Auth.,* 703 F.Supp. 305, 308 (S.D.N.Y.1989) ("[A]mong the factors considered is the presence of a sophisticated and extensive state regulatory scheme involving a complicated area of special state concern."), *aff'd,* 923 F.2d 844 (2d Cir. 1990).

A third factor for the court to consider is whether federal review of this and similar cases would be "disruptive of state efforts to establish a coherent policy with respect to a matter of substantial public concern." *New Orleans Pub. Serv., Inc.,* 491 U.S. at 361, 109 S.Ct. 2506 (quoting *Colorado River,* 424 U.S. at 814, 96 S.Ct. 1236) (internal quotation marks omitted); *County of Allegheny,* 360 U.S. at 189, 79 S.Ct. 1060 (holding that abstention is proper when the exercise of jurisdiction by a federal court would disrupt a state administrative process or otherwise create needless friction by unnecessarily enjoining state officials from executing domestic policies); *Burford,* 319 U.S. at 344, 63 S.Ct. 1098 ("Conflicts in the interpretation of state law, dangerous to the success of state policies, are almost certain to result from the intervention of the lower federal courts."); *see also Hanlin Group,* 703 F.Supp. at 309 ("As the court in *Burford* noted, when a statutory standard lends itself to variation in its application, litigation regarding such statute should not be entertained in federal forum.").

Under *Burford* and its progeny, a finding that the case at bar implicates the first and either of the second or third factors tells in favor of finding that the states' interest in adjudicating the case in its own forum outweighs the federal interest in retaining jurisdiction. In that case, "a sound respect for the independence of state action requires the federal equity court to stay its hand." *Burford,* 319 U.S. at 334, 63 S.Ct. 1098; *see also Sheerbonnet, Ltd. v. American Express Bank, Ltd.,* 17 F.3d 46, 48 (2d Cir.1994) (recognizing the validity of Burford abstention when there are difficult questions of state law with bearing on issues of substantial public importance or when review by federal courts would disrupt a state's effort to establish a coherent policy on a matter of substantial importance to the state); *American Disposal Servs., Inc. v. O'Brien,* 839 F.2d 84, 87 (2d Cir.1988) (same).

B. *Corporate Dissolution and Burford Abstention in the Second Circuit*

The Second Circuit recently recognized that dissolution of New York corporation is a subject which implicates the first and the third Burford factors: the exercise of federal review over corporate dissolutions would disrupt New York's attempt to develop a unified policy concerning its corporations, a matter which is of great importance to the state; and New York courts offer an appropriate forum for resolving questions of corporate dissolution. *Friedman v. Revenue Management of New York, Inc.*, 38 F.3d 668, 671 (2d Cir.1994). These conditions being satisfied, the Second Circuit held that federal courts may properly refrain from ruling on motions to dissolve New York corporations. *Id.*[6]

There is a lengthy history of federal court recognition of the important interest states have in crafting a unitary policy concerning the creation, endurance, and dissolution of corporations. In an oft-quoted statement, the Circuit Court for the District of New Jersey long ago observed that "[t]he corporation is the creature of the state. It derives its life from the state. It possesses the powers conferred by the state. The period of its existence is determined solely by the will of the state." *Conklin v. United States Shipbuilding Co.*, 140 F. 219, 222 (C.C.D.N.J.1905); *see Harrison*, 1992 WL 205839, at *2 (quoting *Conklin*, 140 F. at 222); *Cuddle Wit*, 1990 WL 115620, at *2 (same); *Codos*, 711 F.Supp. at 78 (same); *Alkire*, 379 F.Supp. at 1214 (same). In keeping with this history, the Second Circuit has unequivocally recognized New York's interest in developing a coherent policy concerning its domestic corporations:

**6.** It is appropriate to note that federal courts differ about whether they even have subject matter jurisdiction over claims for corporate dissolution. The debate has few important ramifications, however, since the federal courts that have addressed the issue have almost uniformly ruled that even if federal courts have subject matter jurisdiction over claims for corporate dissolution, they should abstain from exercising it. *Compare Friedman v. Revenue Management, Inc.*, 839 F.Supp. 203, 205 & n. 2 (S.D.N.Y.1993) (finding that the court lacks subject matter jurisdiction over the plaintiff's claim for corporate dissolution and, in the alternative, that it is appropriate for the court to abstain from exercising its jurisdiction); *Codos v. National Diagnostic Corp.*, 711 F.Supp. 75, 78 (E.D.N.Y.1989) (same); *Alkire v. Interstate Theatres Corp.*, 379 F.Supp. 1210, 1214–15 (D.Mass.1974) (same); *and In re English Seafood (USA), Inc.*, 743 F.Supp. 281, 287–289 (D.Del.1990) (holding that the court has subject matter jurisdiction over the plaintiff's claim for corporate dissolution, but that the court should abstain from exercising it); *with Langner v. Brown*, 913 F.Supp. 260, 271 (S.D.N.Y.1996) (abstaining from exercising jurisdiction over the plaintiff's claim for corporate dissolution without ruling on subject matter jurisdiction); *Harrison v. CBCH Realty, Inc.*, No. 92–CV–434, 1992 WL 205839, at *4 (N.D.N.Y. Aug.13, 1992) (same); *Cuddle Wit, Inc. v. Chan*, No. 89 Civ. 7299, 1990 WL 115620, at *2 (S.D.N.Y. Aug.7, 1990) (same); *see also Hunter v. SMS, Inc.*, 843 F.2d 1391,

Nos. 86–1004, 86–1032, 1988 WL 30056, at *15–16 (6th Cir. Apr.6, 1988) (approving district court's abstention, on *Burford* grounds, from hearing state law claim to dissolve corporation) (unreported opinion); *Boucher v. Sears*, No. 89–CV–1353, 1997 WL 736532, at **18–19 (N.D.N.Y. Nov.21, 1997) (finding supplemental jurisdiction over state claim to dissolve corporation but abstaining from exercising jurisdiction over dissolution claim (citing *Friedman*, 38 F.3d at 671)). *But see Nutronics Imaging, Inc. v. Danan*, No. CV 96–2950, 1998 WL 426570, at *5 (E.D.N.Y. June 10, 1998) (recognizing the strong judicial policy in the Second Circuit favoring abstention from motions for corporate dissolution yet deferring judgment on the propriety of abstention pending entry of evidence by defendants). In *Friedman*, the Second Circuit expressly left open the question of whether federal courts have subject matter jurisdiction over state claims for corporate dissolution and held that even if they do, abstention is permitted:

Although we have not previously addressed [the question of a federal court's subject matter jurisdiction over a plaintiff's motion to dissolve a corporation], we need not authoritatively resolve it at this time.... Even if the district court possessed jurisdiction to dissolve [the corporation], we believe that it did not abuse its discretion in holding in the alternative that it would have abstained from exercising that power.

38 F.3d at 671.

New York has a strong interest in the creation and dissolution of its corporations and in the uniform development and interpretation of the statutory scheme regarding its corporations.... [It is] "difficult to conceive of an issue more important to the state than the continuation or dissolution of a corporation that was created and exists through the operation of its laws."

*Friedman,* 38 F.3d at 671 (quoting *Harrison,* 1992 WL 205839, at *4).[7]

The *Friedman* Court also explicitly acknowledged that federal adjudication of claims for corporate dissolution would disrupt New York's efforts to establish a coherent corporate policy:

[G]iven the comprehensive regulation of corporate governance and existence by New York ... abstention would avoid needless interference with New York's regulatory scheme governing its corpo-

rations.... Moreover, [for a federal court] to exercise jurisdiction over a dissolution of a state corporation would allow "the possibility of federal dissolution actions, based on [state statutes], being commenced in a number of different districts in which a particular ... corporation was subject to service, thereby placing an onerous burden on the corporation."

*Friedman,* 38 F.3d at 671 (quoting *Alkire,* 379 F.Supp. at 1215).[8] This, too, is in keeping with longstanding federal precedent. Thus even sixty years ago the Supreme Court was able to observe that "it has long been accepted practice for the federal courts to relinquish their jurisdiction in favor of the state courts, where its exercise would involve control of or interference with the internal affairs of a domestic corporation of the state." *Williams,* 294 U.S. at 185, 55 S.Ct. 380;

---

**7.** In an attempt to distinguish *Friedman,* Feiwus argues that "[t]he corporation (or any other fact or issue) here does not implicate any 'matter of substantial public concern,' but essentially involves a *private* dispute between partners and shareholders in this small business venture." (Pl.'s Letter Br. of Oct. 1, 1998 at 4.) This is to misconstrue the object of analysis. The question is not whether the state has an interest in the activities of the corporation or the particular dispute among its shareholders and partners. Rather, the question is whether the state has a significant interest in the mechanism by which such disputes are adjudicated when the adjudication has the potential to interfere with the state's attempt to create a coherent system of corporate regulation.

**8.** The Second Circuit did not elaborate on how federal involvement in corporate dissolution would create interference with New York's regulatory scheme. The fact that dissolution is a discretionary form of relief, and that the "statutory standard lends itself to variation in its application," *Hanlin Group,* 703 F.Supp. at 309, is surely relevant. Feiwus relies upon a claim of corporate oppression and waste (under N.Y.Bus.Corp.Law § 1104–a, see n. 5, above) as the basis for his motion for dissolution. What constitutes waste and oppression, however, is open to reasonable disagreement. There is, of course, much case law governing judicial dissolution under § 1104–a. But while the case law constrains a court's discretion as to what consti-

tutes corporate oppression and waste, it does not eliminate it entirely. It is well settled that the decision to order the involuntarily dissolution of a New York corporation is vested in the court's discretionary authority. N.Y.Bus. Corp.Law § 1111(a) (McKinney 1986) ("In an action or special proceeding under this article if, *in the court's discretion,* it shall appear that the corporation should be dissolved, it shall make a judgment or final order dissolving the corporation.") (emphasis added); *In re Kemp & Beatley, Inc.,* 64 N.Y.2d 63, 73, 484 N.Y.S.2d 799, 805–06, 473 N.E.2d 1173, 1179–80 (1984) (appropriateness of order of involuntary dissolution of corporation under Business Corporation Law is vested in the sound discretion of the court considering application for such dissolution); *Gimpel v. Bolstein,* 125 Misc.2d 45, 49, 477 N.Y.S.2d 1014, 1017 (Sup.Ct. 1984) (same); *In re Topper,* 107 Misc.2d 25, 28, 433 N.Y.S.2d 359, 362 (Sup. Ct. 1980) (same). Thus even considering the case law, § 1104–a creates a standard that "lends itself to variation in its application." Federal courts are not often faced with the question of whether a state corporation should be involuntarily dissolved. (See n. 9, below.) Given the importance to New York of coherent corporate regulation, the decision to dissolve a New York corporation is best left to the fora that, because of familiarity, are better situated to appreciate the trajectory of the state's evolving corporate policy.

accord *Meredith v. City of Winter Haven*, 320 U.S. 228, 235, 64 S.Ct. 7, 88 L.Ed. 9 (1943).

Finally, while the *Friedman* Court did not overtly find that the state courts would provide an adequate forum for the plaintiff's motion to dissolve the corporation, it is clear that it made this assumption. *See, e.g.,* 38 F.3d at 672 ("[T]he district court did not abuse its discretion in declining to transfer the action in order to permit Friedman to institute a single action in New York state court, where he might obtain the full relief he seeks."). The Second Circuit may not have found it necessary to address this issue because New York Supreme Courts are courts of general original jurisdiction, N.Y. Const. art. VI, § 7(a), (b), and are the fora in which motions to dissolve New York corporations are most frequently brought.[9]

*Friedman* therefore counsels this court to abstain from exercising jurisdiction over the Plaintiff's motion to dissolve the corporation. Because it had before it only a motion to dissolve a corporation, however, the *Friedman* court did not directly address whether it is proper for a federal court to abstain from other discretionary claims regarding state corporations. Feiwus urges this court to infer no implications from *Friedman* regarding his other claims:[10]

Although *Friedman* stands for the proposition that a federal district court may abstain from the narrow equitable *remedy* of liquidating a New York corporation, *Friedman* does not stand for the proposition that the federal courts must or should abstain from any and all *claims* brought pursuant to New York's Business Corporation Law, the appointment of a receiver, the enforcement of a buy-out, or any other legal or equitable remedies available pursuant to law or other authority.

(Plaintiff's Letter Br. of Dec. 16, 1998 at 2.) This narrow construction puts the cart before the horse. In *Friedman,* the Second Circuit held that where the state had created a comprehensive regulatory scheme of corporate governance and existence, abstaining from adjudicating a motion to dissolve a state corporation was proper because the state "has a strong interest in the creation and dissolution of its corporations *and in the uniform development and interpretation of the statutory scheme regarding its corporations."* 38 F.3d at 671 (emphasis added). It was the "avoidance of needless interference with New York's regulatory scheme governing its corporations," *id.,* and not the dissolution of a state corporation which was of principal concern to the *Friedman* court—

---

9. A cursory search of Westlaw disclosed twenty-two actions in New York State courts (nineteen in appellate division courts, three in supreme courts) for judicial dissolution of a corporation brought by minority shareholders pursuant to N.Y.Bus.Corp.Law § 1104–a (McKinney 1986 & Supp.1998) since January 1, 1997. The same search turned up no such actions in federal district courts or the Second Circuit during the same period.

10. Although plaintiff's moving papers seek an order: (1) dissolving Genpar and Abingdon Management and appointing a receiver to administer the dissolution; or, in the alternative, (2) compelling defendants to buy out plaintiff's interest in these entities, (Not. of Mot. dated May 29, 1998 at 1–2), the primary thrust of plaintiff's motion is for dissolution. After the court raised the abstention issue, however, plaintiff, in a series of letters to the court, shifted his focus from dissolution to the

appointment of a receiver or, alternatively, a buy-out. (Letters from Michele Kahn to the court dated October 1, 1998, December 16, 1998, and December 21, 1998.) In fact, despite the clear focus of his motion papers, Feiwus attempted to argue that he never sought dissolution at all. (Letter from Michele Kahn to the court dated December 16, 1998 at 3.) In any event, for the reasons discussed above, because a motion to appoint a receiver or compel a buy-out has the potential to disrupt New York's unified policy concerning its corporations in precisely the same manner in which a motion for dissolution does, abstention is appropriate for these claims as well. In addition, because a court should examine *all* remedies sought when alternative relief is requested, the state court, which can offer complete relief, is the more appropriate forum.

though the latter provided the mechanism by which the former could be addressed. Had the Business Corporation Law set forth a bright-line, non-discretionary rule for involuntary corporate dissolution,[11] the outcome of *Friedman* would likely have been different. A federal court's appointment of a receiver; compelling a buy-out; declaring the outcomes of shareholders' meetings to be null and void; and compelling a corporation's officers to account for their official actions also have the potential to disrupt the uniform development and interpretation of New York's statutory scheme regarding its corporations because the propriety of these remedies is determined by general equitable principles rather than clear-cut rules of law.[12]

Feiwus relies heavily on *Sriram v. Preferred Income Fund III Ltd. Partnership*, 22 F.3d 498 (2d Cir.1994), as precedent for federal court involvement in the dissolution of a corporation and the appointment of a receiver, pursuant to state law. (Pl.'s Mem. of Law at 21–22; Pl.'s Letter Br. of Oct. 1, 1998 at 3; Pl.'s Letter Br. of Dec. 16, 1998 at 3.) *Sriram* is inapposite for three reasons. First, *Sriram* was concerned with the dissolution of a partnership, not a corporation. Because there are significant differences between partnerships and corporations, the fact that the Second Circuit allowed a federal court to dissolve a state partnership is of little relevance to the present case given the Second Circuit's explicit holding in *Friedman* regarding the propriety of a federal court's dissolution of state corporations. Second,

the central fact underlying the application to dissolve was uncontested in *Sriram*. Under the Delaware Revised Uniform Limited Partnership Act, a court may order the dissolution of a partnership on application by or for a partner "whenever it is not reasonably practicable to carry on the business in conformity with the partnership agreement." Del.Code Ann. 6. § 17–802 (1997). The parties in *Sriram* agreed that "the partnerships cannot survive under the strictures imposed by the original [partnership] Agreements." 22 F.3d at 502. Thus under the facts of this case, the court's decision to dissolve the partnership did not require it to exercise its discretion. There was, therefore, no possibility that the order of the court would create "needless interference" with Delaware's comprehensive regulatory scheme governing its partnerships, should there be one. Third, even if *Sriram* were to stand for the proposition that a federal court may participate in corporate dissolutions, it was decided prior to *Friedman* and, without a sufficient explanation to the contrary, would now be presumptively overruled.[13]

Because adjudicating Feiwus' discretionary claims has the potential to interfere with New York's regulatory scheme governing its corporations, and because Feiwus can obtain full relief in New York Supreme Court, I respectfully recommend that the court dismiss without prejudice his requests to dissolve Genpar and to appoint a receiver, to compel a buy-out, to

---

11. For example, if dissolution were required simply on the motion of a minority shareholder.

12. Thus Feiwus' reliance on the distinction between remedy and claim is misplaced. It is without a doubt true that *Friedman* does not hold that federal courts should "abstain from any and all claims brought pursuant to New York's Business Corporation Law." (Pl.'s Letter Br. of Dec. 16, 1998 at 2 (emphasis omitted).) Nor does this court need to address the question of when, if ever, it is proper for a federal court to entertain an action brought pursuant to the Business Corporation Law. If, however, a federal court's adjudication of a

claim threatens to disrupt needlessly a state's "efforts to establish coherent policy in an area of comprehensive state regulation," *Friedman*, 38 F.3d at 671, then abstention becomes a possibility, no matter what the source of the claim is.

13. Feiwus' reliance on *Thompson's Point, Inc. v. Safe Harbor Dev. Corp.*, 862 F.Supp. 594 (D.Me.1994), as precedent for the propriety of a buy-out compelled by a federal court suffers from similar infirmities: It was decided prior to *Friedman* and, in any event, it is a case from outside this circuit.

compel an accounting, and to declare the outcome of the shareholders' meeting null and void.[14]

In addition, I also respectfully recommend that the court dismiss without prejudice plaintiffs motion for dissolution of Abingdon Management, the limited .partnership. Because plaintiff does not address this claim in his motion papers other than in his notice of motion, it is difficult to ascertain the basis for this claim. The limited partnership agreement provides that Abingdon Management shall be terminated and dissolved upon dissolution of Genpar, its general partner. (Feiwus Aff., Ex. E at 11.) Therefore, the court assumes that plaintiff's motion to dissolve Abingdon Management is premised upon plaintiff's application to dissolve Genpar. Because the court recommends abstention on plaintiff's motion to dissolve Genpar, and because in any event, plaintiff, who has no interest in the limited partnership, lacks standing to move for dissolution thereof,[15] the court recommends that to the extent plaintiff's motion seeks dissolu-

tion of the limited partnership, it should be denied without prejudice.

## C. Plaintiff's Damages Claims

█ In addition to his discretionary claims, Feiwus also asserts claims for damages based on common law theories of breach of contract, breach of fiduciary duty, and fraud. In *Quackenbush*, the Supreme Court revisited the Burford abstention doctrine and considered the propriety of abstention from common law claims for damages. The Court reaffirmed the proposition that under *Burford*, "the authority of a federal court to abstain from exercising its jurisdiction extends to all cases in which the court has discretion to grant or deny relief." *Quackenbush*, 517 U.S. at 718, 116 S.Ct. 1712. However, the Court also recognized an important qualification to Burford abstention. Appealing to the "distinct historical pedigree" of abstention doctrines, *id.* at 722, 116 S.Ct. 1712, the Court resolved a circuit split about the propriety of dismissing common law actions for damages on *Burford* grounds. The Court noted that while "we

14. Since I recommend dismissal of these claims and since the *Quackenbush* Court held that under proper circumstances a federal court relying on abstention principles can dismiss claims that are "equitable or otherwise discretionary" but, at most, it can only stay actions at law for damages, 517 U.S. at 731, 116 S.Ct. 1712, it is important to establish that these claims in fact call upon the court's discretionary power. It is well settled that the decision to dissolve a New York corporation is vested in the discretionary power of the court. (See n. 8, above.) The court has broad latitude in fashioning alternative relief to involuntary dissolution of a corporation. *In re Kemp*, 484 N.Y.S.2d 799, 473 N.E.2d at 1180. This includes compelling the other shareholders to buy out the minority shareholder who brought the action for dissolution. *Wolff v. Wolff*, 112 A.D.2d 850, 492 N.Y.S.2d 763, 764 (1st Dep't), *appeal granted*, 66 N.Y.2d 602, 497 N.Y.S.2d 1025, 488 N.E.2d 116 (1985), *aff'd as modified*, 67 N.Y.2d 638, 499 N.Y.S.2d 665, 490 N.E.2d 532 (1986). Thus a decision to compel a buy-out is also within the discretionary powers of the court. Similarly, courts have long recognized the right under N.Y.Bus.Corp.Law, § 720 to bring a derivative action and so compel the di-

rectors of a corporation to account for their official actions as equitable in nature. *See, e.g., Krauss v. Dinerstein*, 62 Misc.2d 682, 683–84, 309 N.Y.S.2d 962, 964 (Civ.Ct.N.Y.County 1970), *superceded on other grounds*, Civil Court Act § 213; *Burnham v. Brush*, 176 Misc. 39, 40–41, 26 N.Y.S.2d 397, 398–399 (Sup.Ct.1941). Lastly, the Business Corporation Law makes no provision for remedy in case a shareholders' meeting is called in violation of the notice requirement of N.Y.Bus.Corp.Law § 605 (McKinney 1986 & Supp.1998), implicitly leaving it to the court to fashion an appropriate remedy. *See, e.g., In re Melloh*, 17 Misc.2d 902, 903–04, 187 N.Y.S.2d 203, 204–05 (Sup.Ct.1959); *Davison v. Parke, Austin & Lipscomb*, 165 Misc. 32, 299 N.Y.S. 960 (Sup.Ct. 1937), *order modified by*, 256 A.D. 1071, 12 N.Y.S.2d 358 (1st Dep't 1939); *In re Keller*, 116 A.D. 58, 101 N.Y.S. 133, 134–135 (3d Dep't 1906).

15. Plaintiff is a thirty percent shareholder of Genpar, which in turn is the sole general partner of Abingdon Management. (Compl.¶¶ 2, 11.) Plaintiff is neither a general nor a limited partner in Abingdon Management.

have permitted federal courts applying abstention principles in damages actions to enter a stay, ... we have not permitted them to dismiss the action altogether." *Id.* at 730, 116 S.Ct. 1712. Because, the Court explained, a federal court's power to abstain from adjudicating a claim "derives from the discretion historically enjoyed by courts of equity," *id.* at 728, 116 S.Ct. 1712, "federal courts have the power to dismiss or remand cases based on abstention principles *only* where the relief being sought is equitable or otherwise discretionary," *id.* at 731, 116 S.Ct. 1712 (emphasis added). Since the claim before the Court in *Quackenbush* was only for damages based on common law tort and contract theories, the Court held that the district court's order remanding the suit to state court was "an unwarranted application of the Burford doctrine." *Id.*

Citing *Quackenbush* and *In re Cathedral of Incarnation,* 99 F.3d 66 (2d Cir. 1996), Feiwus argues that the court "cannot abstain over [sic] the legal claims here, and should not withhold any relief that would otherwise be available pursuant to fraud, breach of contract, breach of fiduciary duty or the other legal claims presently before [the court]." (Pl.'s Letter Br. of Dec. 16, 1998 at 2.) Feiwus fails to mention, however, that the Supreme Court has recognized the propriety of applying abstention principles to damages actions under appropriate circumstances. The *Quackenbush* Court did not hold that abstention analysis is always inappropriate when common law claims are at issue. 517 U.S. at 730, 116 S.Ct. 1712 ("[W]e have not held that abstention principles are completely inapplicable in damages actions.").[16] Rather, it held that when a court's analysis reveals that a common law claim for damages implicates Burford ab-

stention, the court may not dismiss the action but may order a stay pending resolution in state court of the issue that underlies the court's abstention analysis. *See, e.g., id.* at 731, 116 S.Ct. 1712 (*"Burford* might support a federal court's decision to postpone adjudication of a damages action pending the resolution by the state courts of a disputed question of state law."). If, as with his discretionary claims, adjudicating Feiwus' damages claims has the potential to disrupt New York's ability to control the development of its regulatory scheme regarding corporations, then staying adjudication of these claims would be in order.

Adjudication of Feiwus' damages claims and his discretionary claims requires resolution of common questions of law and fact. Feiwus asks for damages for Genpar's alleged breach of contract in dismissing him from his employment as the manager of property owned by Genpar. The Defendants answer that there was no employment contract between Feiwus and Genpar and that Feiwus was therefore only an employee at will. Feiwus also asks that the court dissolve Genpar under N.Y.Bus.Corp.Law § 1104–a because the majority shareholders have engaged, *inter alia,* in corporate oppression and waste. The corporate oppression alleged is the majority's dismissal of Feiwus from his management position. Under New York law, the dismissal of a minority shareholder from salaried employment constitutes corporate oppression so long as the minority shareholder had a reasonable expectation of continued employment. *See, e.g., In re Imperatore,* 128 A.D.2d 707, 708, 512 N.Y.S.2d 904, 905 (2d Dep't 1987). Thus the question of whether there existed an employment contract between Genpar and Feiwus and, if so, whether Genpar breach-

---

**16.** The Second Circuit is in accordance with the Supreme Court on this issue. In discussing *Quackenbush* in *Cathedral,* the Second Circuit noted that "the Court ruled that a dismissal or remand (*as opposed to a stay* ) under *Burford* is appropriate only in a suit seeking relief that falls under the discretion-

ary powers of courts of equity.... The Court thus concluded that, in an action for damages, a federal court had no authority to refuse relief by abstaining, *through either dismissal or remand,* where the abstention was based on the judicially created Burford doctrine." 99 F.3d at 68 (emphasis added).

ed that contract will be central not only to Feiwus' claim for damages, but also to his motion for corporate dissolution.

Similarly, Feiwus' claims for damages for breach of fiduciary duty and fraud and his motion for dissolution based on allegations of corporate waste implicate overlapping questions of law and fact. Feiwus argues that defendant Josefson was under an obligation to transfer the deed to the property from Abingdon Management Corp. to the limited partnership shortly after Abingdon Management acquired title. He asserts that Josefson's failure to do so has reduced the value of the property. Feiwus alleges that Josefson's untimely transfer, and the other individually named defendants' complicity in this, constitutes breach of fiduciary duty and fraud. He also alleges that it constitutes corporate waste and so supports a motion for dissolution of Genpar. Thus whether Abingdon Management was under Josefson's control and whether Josefson under an obligation to transfer the deed to the limited partnership shortly after Abingdon Management acquired title are questions that are central both to Feiwus' damages claims and to his motion for dissolution.

If this court abstains from Feiwus' discretionary claims, dismissing them and leaving him to file them in state court, but adjudicates his damages claims, then, because of collateral estoppel, it will preclude the state court from deciding for itself issues that are central to Feiwus' motion for dissolution. Second Circuit precedent, supported by Supreme Court precedent, has squarely held that the creation of a unitary corporate policy by the state is a sufficiently important state interest to recommend abstention by federal courts from motions to dissolve corporations. *Friedman*, 38 F.3d at 671; *Williams*, 294 U.S. at 185, 55 S.Ct. 380. By hearing Plaintiff's damages claims, this court will "serious[ly] affront" federalism, *Quackenbush*, 517 U.S. at 733, 116 S.Ct. 1712 (Kennedy, J., concurring), no less than if it ruled on his motion to dissolve the corporation. Thus although Feiwus' damages claims implicate Burford abstention, dismissal is not an option under *Quackenbush*. I therefore respectfully recommend that the court stay Feiwus' damages claims, pending resolution of his discretionary claims in New York State.[17]

**17.** The res judicata effects of claim splitting will likely not preclude Feiwus from having his damages claims adjudicated by the court after litigation of the discretionary claims by New York Supreme Court. Usually, a plaintiff who litigates only some of the claims arising from a single cause of action will be barred from litigating the others later. *See, e.g., Manhattan Eye Ear & Throat Hosp. v. NLRB*, 942 F.2d 151, 155–56 (2d Cir.1991) ("Under res judicata, upon·a final judgment on the merits parties to a suit are barred, as to every matter that was offered and received to sustain or defeat a cause of action, as well as to any other matter that the parties had a full and fair opportunity to offer for that purpose."); *Estate of Young v. Williams*, 810 F.2d 363, 365 (2d Cir.1987) (holding that prior state court action in which plaintiffs obtained equitable relief barred subsequent diversity action for damages). However, in *England v. Louisiana State Bd. of Med. Examiners*, the Supreme Court held that when a federal court stays a proceeding on abstention principles pending resolution of some issue by a state court, a plaintiff retains the right to return to the federal court for determination of his or her claims so long as he or she has not freely and without reservation submitted those claims for adjudication before the state court. 375 U.S. 411, 417–18, 84 S.Ct. 461, 11 L.Ed.2d 440 (1964); *see also Front Royal and Warren County Indus. Park Corp. v. Town of Front Royal, Virginia*, 135 F.3d 275, 283 (4th Cir.1998) ("Presumably, [as in *England* ], similar requirements are appropriate for return to federal court after Burford abstention."). Erwin Chemerinsky, Federal Jurisdiction 707–712 (2d ed.1994). *But see* 17A Charles Alan Wright, Arthur R. Miller & Edward H. Cooper, *Federal Practice and Procedure § 4243 (2d ed.1988)* ("England allows reservation of federal questions. It does not authorize submitting one state issue to a state court while reserving other state issues for the federal court."). Thus if Feiwus litigates his discretionary claims in state court, he will likely be free to return to federal court, if he so chooses, to litigate his damages claims.

Whether principles of issue preclusion will require the federal court to accept state court findings of fact is less clear. Generally, issue preclusion is appropriate in a federal court action when it would be applied by the state

## CONCLUSION

For the reasons set forth above, I respectfully recommend that Plaintiff's motion for an order dissolving Genpar, Inc. and Abingdon Management and appointing a receiver to administer the dissolution or, in the alternative, compelling Defendants to buy out Plaintiff's interest in these entities be denied. In addition, I recommend that Plaintiff's discretionary claims be dismissed and his damages claims stayed, pending resolution of the discretionary claims in New York state court.

Objections to this report and recommendation, if any, must be served and filed within ten (10) business days, with courtesy copies to Judge Block and the undersigned, in order to preserve appellate review. *See* 28 U.S.C. § 636(b)(1); Fed. R.Civ.P. 72, 6(a), 6(e).

February 17, 1999.

courts of the state in which the federal court is located. 28 U.S.C. § 1738 (1998); *see Winters v. Lavine*, 574 F.2d 46, 56 (2d Cir.1978) (recognizing that a litigant in federal court in New York is precluded from relitigating issues which were litigated and determined adversely to him in prior state court proceeding but, for doctrine of collateral estoppel to be applicable, determination of issue must have been necessary to prior decision); *Schwartz v. Public Adm'r*, 24 N.Y.2d 65, 298 N.Y.S.2d 955, 246 N.E.2d 725, 729 (1969) (stating two necessary requirements for the invocation of the doctrine of collateral estoppel are that first, "[t]here must be an identity of issue which has necessarily been decided in the prior action and is decisive of the present action, and, second, there must have been a full and fair opportunity to contest the decision now said to be controlling").

In *England* the Court relaxed the preclusive effect of prior state court fact finding when the prior state findings were the result of federal abstention: "[I]n cases, where, but for the application of the abstention doctrine, the primary fact determination would have been made by the District Court, a litigant may not be unwillingly deprived of that determination." 373 U.S. at 417, 83 S.Ct. 1349. More recent Supreme Court opinions, however, have applied collateral estoppel in constitutional cases and prevented relitigation of facts, and so have cast doubt upon the vitality of the right to *de novo* federal fact review proclaimed in *England*. See, e.g., *Allen v. McCurry*, 449 U.S. 90, 103–105, 101 S.Ct. 411, 66 L.Ed.2d 308 (1980) (holding that federal courts adjudicating § 1983 claims must give collateral estoppel to state court findings of fact). Since Feiwus does not seek the court's protection of any federal rights, and since the Supreme Court has denied a right to *de novo* review of facts even in cases in which plaintiffs assert constitutional claims, it seems probable that the court will be bound by the state court's fact finding, should Feiwus later return. *Cf. Instructional Sys., Inc. v. Computer Curriculum Corp.*, 35 F.3d 813, 822 (3d Cir.1994) (holding that in resolving federal issues, the federal court was bound by the state court determinations of fact and state law resulting from state court adjudication brought about by federal abstention on *Pullman* grounds).